1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**Editte D. Lerman (**SB#241471)
EMERALD LAW GROUP
280 North Oak Street
Ukiah, CA 95482
Tel: (707) 468-8300
Fax:(707) 937-2209

Attorney for Plaintiffs
**Church Of Ambrosia,**
**Zide Door Church Of**
**Entheogenic Plants**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

* * * * * *

CHURCH OF AMBROSIA, AND
ZIDE DOOR CHURCH OF
ENTHEOGENIC PLANTS

        Plaintiff,

        vs.

CITY OF OAKLAND, OAKLAND
POLICE DEPARTMENT, JOHN
ROMERO (AKA ERIC JOHN HENRY),
and DOES 1-25

        Defendants.
_____

)   CASE NO.:  4:22-cv-4655
)
)
)
) **COMPLAINT FOR DAMAGES FOR**
) **VIOLATION OF CIVIL RIGHTS**
)
) [42 U.S.C. §§ 2000cc, 1983 and 1988]
)
)
)
)
)
) **DEMAND FOR JURY TRIAL**
)
)

**INTRODUCTION**

    1.     Plaintiffs, CHURCH OF AMBROSIA (hereinafter "COA") and its local

assembly, ZIDE DOOR CHURCH OF ENTHEOGENIC PLANTS (hereinafter "ZIDE DOOR")

are religious assemblies, commonly described as a church. They bring this suit for injunctive

relief, declaratory relief, damages, and attorneys' fees and costs against Defendant CITY OF

OAKLAND (hereinafter "OAKLAND"), the OAKLAND POLICE DEPARTMENT (hereinafter

"OAKLAND PD"), and JOHN ROMERO (AKA: Eric John Henry) (hereinafter "ROMERO")

pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§

2000cc to 2000cc-5; the Free Exercise Clause and the Establishment Clause of the First Amendment to the United States Constitution; the Equal Protection Clause of the Fourteenth Amendment; the and the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988; Plaintiffs' claims arise from Oakland's land use code which prohibits the free exercise of plaintiffs' religious ceremonies and sacraments within the physical walls of its facilities. Plaintiffs' claims also arise from the unlawful search and seizure of Plaintiffs' premises and property.

2.      As alleged in greater detail below, OAKLAND's land use code does not rest on a neutral, principled application of the facts.  Since Plaintiffs' activities meet all of the requirements of the OAKLAND's land use code other than its religious practices, any application for a permit for the ZIDE DOOR Church's operations is a futile exercise.

3.      CHURCH OF AMBROSIA and its local assembly, ZIDE DOOR CHURCH OF ENTHEOGENIC PLANTS are religious assemblies, which practice the religious use of entheogenic plants. The entheogenic plants are classified a Schedule I substances within the California Uniform Controlled Substances Act, (*California Health & Safety Code* § 11054).

4.      As alleged in greater detail below, OAKLAND's the mandatory denial of any application submitted by Plaintiffs for their operations violates Plaintiffs' right to freely exercise their religion, as secured by RLUIPA, the First Amendment, and the Fourteenth Amendment. Defendant's land use code substantially burdens Plaintiffs' exercise of religion, and the burden is not the least restrictive means of furthering any compelling government interest. In addition, OAKLAND's land use code, as applied, unlawfully discriminates against the church.

5.      Plaintiffs seek (a) permanent injunctive relief requiring Defendant, OAKLAND to consider the church's application to operate at its current location, without the consideration of its religious practices; (b) such other injunctive relief as the Court, deems appropriate; (c) a declaration that the facts concerning Plaintiffs' operations satisfies all of the requirements of the OAKLAND's land use code; (d) damages to compensate Plaintiffs for the harms they suffered as a result of Defendant's violations of Plaintiffs' constitutional and statutory rights; (e) exemplary damages on Plaintiffs' federal claims in an amount sufficient to deter Defendants and others from acting maliciously and in reckless and callous disregard of, or indifference to, the constitutional and statutory rights of Plaintiffs and others: and (f) Plaintiffs costs and attorney's fees for bringing this suit.

PARTIES

6.     Plaintiff, CHURCH OF AMBROSIA (COA) is a religious assembly in the United States. It is a congregation formed in the County of Alameda, California. Its principal office is in the Northern District of California. The CHURCH OF AMBROSIA brings this action on its own behalf and as representative of its members.

7.     Plaintiff, ZIDE DOOR CHURCH OF ENTHEOGENIC PLANTS (ZIDE DOOR), is a church at all times relevant herein, and is a local assembly of the CHURCH OF AMBROSIA, that is and was operating in the County of Alameda, California.

8.     Defendant, CITY OF OAKLAND (OAKLAND) is located in Alameda County, California, and is a public entity as defined by California Government Code section 811.2.

9.     Defendant, OAKLAND POLICE DEPARTMENT (OAKLAND PD), is a law enforcement agency of the CITY OF OAKLAND.

10.     Defendant, JOHN ROMERO, (AKA: Eric John Henry) in his individual and official capacity, is and was employed, at all relevant times, by defendants, OAKLAND and the OAKLAND POLICE DEPARTMENT.  In doing the acts as herein alleged defendant was acting within the scope of that employment, and in doing other acts as herein alleged was acting in his individual capacity, and at all times herein alleged was acting under color of law and authority, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of California and the CITY OF OAKLAND.

11.     At all times herein mentioned, Defendants Does ONE through TWENTY FIVE, inclusive, were agents of defendants, CITY OF OAKLAND, and/or the OAKLAND POLICE DEPARTMENT and acting within the course and scope of such employment with permission and consent of their co-defendants, and were acting under color of law and authority as agents of CITY OF OAKLAND, and/or OAKLAND POLICE DEPARTMENT and/or other California law enforcement officers.  Plaintiff is informed and believes that each of these fictitiously named defendants is responsible in some manner for the damages suffered by Plaintiff.  The true names of these defendants are currently unknown by Plaintiff, and Plaintiff will seek leave of this Court to amend the Complaint when such names become known.

12.     At all times relevant hereto, each defendant was the agent and/or employee of every other defendant, and performed some of the acts and omissions herein alleged within the course and scope of such, agency and employment.

**JURISDICTION**

13.     This action arises under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, and the Fourth and Fourteenth Amendments to the Constitution of the United States.  This Court has jurisdiction of the federal claims under 28 U.S.C. Sections 1331, 1332, 1343, 2201, and 2202.

14.     This action also arises under the Civil Rights Act of 1871 (42 U.S.C. Sections 1983 and 1988) and the Fourth and Fourteenth Amendments to the Constitution of the United States. This Court has jurisdiction of the federal claims under 28 U.S.C. Sections 1331, 1332, 1343, 2201, and 2202.

**VENUE**

15.     The Court may grant permanent injunctive relief under Federal Rule of Civil Procedure 65 and federal common law. The Court may grant declaratory relief under Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

16.     The Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331.

17.     Venue is proper under 28 U.S.C. § 1391(b) because: (a) Defendant is a governmental entity located in this district; (b) a substantial part of the events or omissions giving rise to the claim occurred in this district; and (c) a substantial part of property that is the subject of this action is situated in this district.

**GENERAL ALLEGATIONS**

18.     Ambrosia, the religion practiced by COA, is an established, spiritist religion that has evolved over thousands of years.  The beliefs and practices of the COA are commonly described by theologians and anthropologists as shamanism.

19.     COA and its assembly have sincerely held religious beliefs, which include: providing a spiritual community for its members, creating a progressive and creative worship experience for its members, offering meditation, prayer and study groups for its members, and welcoming new members into the congregation.

20.     Central and essential to the Ambrosia religion is the sincere, sacramental use of entheogenic plants, and fungi, including cannabis and psilocybin.

21.     The name Ambrosia is derived from Greek Mythology.  It is commonly believed that ancient mythology is rooted in truth.  In the ancient Greek myths, *ambrosia*, the food or

**COMPLAINT**
**COA and Zide Door v. City of Oakland et al**

drink of the Greek gods, is often depicted as conferring longevity or immortality upon whoever consumed it.   Plaintiffs believe that they experience a direct connection with a higher consciousness, their own eternal souls, spiritual beings and God with the use of entheogenic plants and fungi.  They also believe that the use of entheogenic plants have caused human beings to evolve in intelligence and knowledge over the ages.  They also believe that entheogenic plants and fungi were the cause that enabled humans to evolve from primates to beings that can think, reason, communicate, and more importantly connect spiritually to the gods. Entheogenic plants were the reason for the evolution of both abstract human communication and the concept of religion itself.

22.     Plaintiff, ZIDE DOOR, is a local assembly of COA, located at 1216 10th Ave, Oakland, California.

23.     Plaintiffs cultivate and prepare the sacrament during religious rituals held for that purpose. The entheogenic plants, which members of the COA receive as communion during religious ceremonies, connects them to God and the spiritual realm.  Members of COA understand that use of these plants outside of the religious context is prohibited by church law, even though they may be allowed under secular law.

24.     The use of entheogenic plants is religiously mandated activity within the Ambrosia religion.

25.     The sacramental plants, cannabis and psilocybin have been found to contain naturally occurring tetrahydrocannabinol, or psilocybin, which appears on the list of Schedule I controlled substances. (21 U.S.C. § 812).  Both the plants and their active chemical compounds are also on the list of Schedule I controlled substances within the California Uniform Controlled Substances Act.

26.     As a principle of its faith, COA and ZIDE DOOR preach against the non-religious use of drugs and alcohol.

27.     On, or about, January, 2019, COA was formally established in Oakland California.

28.     On, or about, February 6th, 2019, ZIDE DOOR acquired its 1216 10th Ave, Oakland, location, and began its operations at that location.

29.     The ZIDE DOOR facility is a two-story commercial structure. The structure is a solid beige in color with green trim color around the target locations front door. The front door is

located on the ground floor of the west side of the structure.

30.     From February 2019 to present, ZIDE DOOR conducted periodic religious sessions with a small group of people at its 1216 10th Ave, Oakland, location.

31.     Plaintiffs have held several hundred religious services at its 1216 10th Ave, Oakland, location without incident, other than the search and seizure detailed below.

<u>OAKLAND'S LAND USE REGULATIONS</u>

32.     Pursuant to *Oakland Municipal Code* (*OMC*) § 5.02.010:  "a permit from the city is a prerequisite to the operation or maintenance of any business, establishment or place, or to the furtherance of any undertaking or the doing of any thing, unless otherwise specifically provided."

33.     Pursuant to *OMC* § 5.02.130: Prior to the filing of any application for a permit ..., the Planning Director, or his or her designee, shall examine the same for the purpose of ascertaining whether the business, establishment or place for which such permit is desired is proposed to be located within a zone in which the same is permitted pursuant to the provisions of this code and the ordinances and laws of the city. If such location is not within such approved zone, the City Administrator, or his or her designee, shall refuse to accept such application.

34.     There are no locations zoned for the religious use of entheogenic plants.  Pursuant to *OMC* §§ 5.80.010 (C) and 5.80.020 (D)(1) Commercial cannabis may be up for retail sale, or in exchange for entrance to an event, in a Commercial or Industrial Zone.

35.     The parcel of land at 1216 10th Ave, Oakland is zoned CN-3 under Oakland's General Plan.

36.     Under *OMC* § 17.33.030 - Community Assembly is a conditionally permitted activity at parcels zoned CN-3, with L4 limitations.  L4 limitations are as follows:

> 1.  That the proposal will not detract from the character desired for the area;
>
> 2.  That the proposal will not impair a generally continuous wall of building facades;
>
> 3.  That the proposal will not weaken the concentration and continuity of retail facilities at ground level, and will not impair the retention or creation of an important shopping frontage;
>
> 4.  That the proposal will not interfere with the movement of people along an important pedestrian street; and

5.   That the proposal will conform in all significant respects with any applicable district plan which has been adopted by the City Council.

37.   ZIDE DOOR's facility at 1216 10th Ave, Oakland conforms to all of the L4 limitations cited above.

38.   Under *OMC* § 17.10.160 Community Assembly Civic Activities, include Churches, temples, synagogues, and other similar places of worship; Public and private nonprofit clubs, lodges, meeting halls, and recreation centers; and Community, cultural, and performing arts centers;

39.   Plaintiffs COA, and its local assembly ZIDE DOOR are churches, or other similar places of worship.  They are also a form of a private nonprofit club and a cultural center.

40.   Therefore Plaintiffs' use of that parcel of land at 1216 10th Ave, Oakland conforms to Oakland's General Plan.  However their religious use of entheogenic plants including cannabis is not a permitted use in parcels zoned CN, or at any other location, under Oakland's land use regulations, or Oakland's cannabis regulations.

41.   Under *OMC* § 5.80.010 (C): "Cannabis Dispensary" or "Dispensary" shall mean a facility where cannabis, cannabis products, or devices for the use of cannabis or cannabis products are offered, either individually or in any combination, for retail sale or in exchange for entrance to an event, to either adults over twenty-one (21) years of age, qualified patients or primary caregivers. This includes an establishment that delivers cannabis and cannabis products as part of a retail sale.

42.   Plaintiffs' cannabis related activities do not conform to the elements of "Cannabis Dispensary" or "Dispensary" under *OMC* § 5.80.010 (C), because there are no retail sales or cannabis distribution in exchange for entrance to an event.  All cannabis is collectively owned by the members of COA and ZIDE DOOR, and consumed during religious/spiritual practices.

43.   Under *OMC* § 5.80.020 (D)(1): the proposed location of a cannabis dispensary must not be within six hundred (600) feet of a public or private school providing instruction in kindergarten or grades 1 to 12, inclusive (but not including any private school in which education is primarily conducted in private homes), another dispensary or youth center.

44.   Plaintiffs are informed and believe that COA's ZIDE DOOR facility is not within six hundred (600) feet of a public or private school providing instruction in kindergarten or grades 1 to 12, inclusive (but not including any private school in which education is primarily

conducted in private homes), another dispensary or youth center.  Therefore COA's ZIDE DOOR location conforms with *OMC* § 5.80.020 (D)(1).  However, Plaintiffs' religious use of cannabis falls outside the scope of *OMC* § 5.80.010 (C).

45.     Chapter 5.80 of the Oakland Municipal Code also unreasonably limits religious assemblies, institutions, within the City of Oakland.

46.     On November 2, 2004, Oakland City Council submitted Measure Z to voters. The voters approved Measure Z with 65.2% in favor.

47.     A true and correct reprint of the Measure Z and its ballot arguments is attached hereto, and incorporated herein at Exhibit 1.

48.     Chapter 5.80 of the Oakland Municipal Code unlawfully promulgated in violation of Measure Z, without the voter's approval.

49.     Chapter 5.80 of the Oakland Municipal Code is preempted by Measure Z.

<u>OAKLAND RESOLUTION 87731</u>

50.     On June 4, 2019, the Oakland City Council, adopted Resolution No 87731.  A true and correct copy of Oakland's Resolution No 87731 is attached hereto and incorporated herein at Exhibit 2.

51.     Within Resolution No 87731, OAKLAND made, in relevant part, the following findings:

> Entheogenic Plants, based on the term "entheogen", originally conceived by Ott, Ruck, and other colleagues from a working group of anthropologists and ethnobotanists in 1979; and defined herein as the full spectrum of plants, fungi, and natural materials deserving reverence and respect from the perspective of the individual and the collective, that can inspire personal and spiritual well-being', can benefit psychological" and physical wellness'", and can reestablish human's inalienable; and

> [T]he use of Entheogenic Plants have been shown to be beneficial to the health and well-being of individuals and communities in addressing these afflictions via scientific and clinical studies and within continuing traditional practices, which can catalyze profound experiences of personal and spiritual growth; and

> [P]ractices with Entheogenic Plants have long existed and have been considered to be sacred to human cultures and human interrelationships with nature for thousands of years, and continue to be enhanced and improved to this day by religious and spiritual leaders, practicing professionals, mentors, and healers

throughout the world, many of whom have been forced underground; and

Entheogenic Plant practices of certain groups are already explicitly protected in the U.S. under the doctrine of religious freedom -- the Native American Church's use of peyote and the use of ayahuasca by two other churches, a Santo Daime congregation and the Uniao do Vegetal; and

[A] Johns Hopkins University study on "healthy-normals" found that psilocybin can occasion mystical-type experiences, which were considered one of the top five most meaningful experiences in a subject's life for over 75% of their subjects within the first year after the study, and also found continuing positive life-style changes after a 14-month follow-up; and direct relationship to nature.

52. Based upon the forgoing, the Oakland City Council made, in relevant part the following resolutions:

That the Mayor and City Council hereby declare that it shall be the policy of the CITY OF OAKLAND that no department, agency, board, commission, officer or employee of the city, including without limitation, OAKLAND POLICE DEPARTMENT personnel, shall use any city funds or resources to assist in the enforcement of laws imposing criminal penalties for the use and possession of Entheogenic Plants by adults; and

That the Mayor and City Council hereby declare that it shall be the policy of the CITY OF OAKLAND that the investigation and arrest of adult persons for planting, cultivating, purchasing, transporting, distributing, engaging in practices with, and/or possessing Entheogenic Plants or plant compounds on the Federal Schedule 1 list shall be, amongst the lowest law enforcement priority for the City of Oakland.

53. OAKLAND's Resolution No 87731 formally recognizes that entheogenic plants have been considered to be sacred to human cultures and can catalyze profound spiritual experiences.

54. Plaintiffs' use of cannabis and/or psilocybin does not pose a risk of harm to the health of church members or a risk of illicit use outside the church. Its religious use of cannabis and/or psilocybin is under a controlled environment, which is appropriate for the substance and its dosage schedule.

55. Since Plaintiffs' operations satisfy all code requirements for churches and other community service facilities, other than its religious use of entheogenic plants, any application for a permit for its operations is a futile exercise.

56.     Since Plaintiffs' operations satisfy all code requirements for churches and other community service facilities, other than its religious use of entheogenic plants, the OAKLAND's Land use regulations discriminate against the Ambrosia religion.

57.     However, despite the foreseeable futility of applying for a permit, Plaintiffs initiated the permit process by submitting an application for a permit on OAKLAND's online application portal on, or about, the month of June 2021.

58.     On July 13, 2022, OAKLAND requested additional information.

59.     In an abundance of caution, Plaintiffs are filing this lawsuit at this time because the statute of limitations expires on August 13, 2022.

<u>UNLAWFUL SEARCH AND SEIZURE AND</u>
<u>THE LAND USE REGULATION DISPUTE</u>

60.     Plaintiffs' land use dispute began on August 13, 2020, with the search and seizure of Plaintiffs' premises and property.  The ZIDE DOOR premises were searched pursuant to a search warrant issued on August 7, 2022.

61.     At this time of the search and seizure of Plaintiffs' premises and property an injury in fact or an invasion of a legally protected interest of Plaintiffs occurred.  There was a direct causal relationship between the injury and the challenged action alleged herein.

62.     Prior to August 13, 2020, ZIDE DOOR operated in an open and notorious manner, without any opposition.

63.     The search warrant was issued on August 7, 2022, based upon the facts ROMERO submitted within his search warrant affidavit.

64.     Within the search warrant affidavit ROMERO declared, that [t]he [evidence to be seized] appears to fall within the following classification (Pen. Code § 1524): Property, or things used as a means of committing a felony; Property or things that are evidence that tends to show that a felony has been committed, or tends to show that a particular person committed a felony.

65.     According to the search warrant affidavit, the City of Oakland Nuisance Abatement Office received information in May of 2019 from an anonymous complainant, that the 1216 10th Ave location has been operating as a Cannabis Dispensary. ROMERO declared that he conducted a search of the address on the open source medial web site www.Weedmaps.com; that Weedmaps.com is a social medial wed site specifically designed to

advertise Cannabis businesses within a designed geography area that the user specifies; and that using "1216 10th Ave Oakland" as search filter [he] was able to locate this location which was listed as a Commercial Cannabis Dispensary in the City of Oakland.

66.     Plaintiffs deny that COA, ZIDE DOOR, or their location was identified in the Weedmaps.com social medial web site at that time.  Plaintiffs contend that COA and ZIDE DOOR did not advertise, and that the only way people learned about COA and/or ZIDE DOOR was by word of mouth, and possibly by video presentations of their faith.

67.     The search warrant affidavit also provided, "[o]n 06AUG20 [ROMERO] conducted a Buy/Walk operation targeting Zide Door Church of Entheogenic Plants. During that operation [ROMERO] entered 1216 10th Ave in an undercover capacity posing as a customer. I entered the structure by contacting the armed security guard who was standing behind the front security door. After entering the structure, I showed the receptionist my valid CA identification card. I was required to join the church as a monthly member. After completing the membership process, [ROMERO] was able to purchase 3.5 grams. of packaged Cannabis buds material and manufactured Cannabis material for U.S. Currency."

68.     ROMERO omitted the fact that he agreed that all monetary contributions were not for the purchase of goods, as alleged in further detail below.

69.     ROMERO omitted the fact that within the Zide Door premises was a pulpit, pews and other religious regalia and accouterments consistent with religious services.

70.     The search warrant affidavit also provided that the 1216 10th Ave location does not have a permit to operate as a commercial Cannabis Dispensary from the City of Oakland. Oakland is the local licensing authority and has not approved a temporary or permanent license for this location or any commercial Cannabis entity related to this location. The State of California's Bureau of Cannabis Control has not issued this location a temporary or permanent state license to operate a commercial Cannabis Dispensary. All commercial cannabis Dispensaries are required to have a license from the local authority and the state to legally engage in the sales of medical or recreational marijuana to the public.

71.     A true and correct copy of the search warrant affidavit is attached hereto at Exhibit 3 and incorporated herein.

72.     On August 7, 2020, Superior Court Judge M. J. Gaffey issued the requested search warrant.

**COMPLAINT**
**COA and Zide Door v. City of Oakland et al**

73.     A true and correct copy of the search warrant is attached hereto at Exhibit 4 and incorporated herein.

74.     On 2020-08-06, ROMERO became a member of the ZIDE DOOR under a false name, Eric John Henry. At that time, ROMERO presented an invalid, and/or forged California Driver's License.  A true and correct redacted photograph of the document is attached hereto, and incorporated herein, at Exhibit 5.

75.     A true and correct copy of a photograph of ROMERO that was taken during the August 13, 2020, search of Plaintiffs' premises is attached hereto and incorporated herein at Exhibit 6.  A comparison of the photograph of ROMERO at Exhibit 6 with the California Driver's License for Eric John Henry, attached at Exhibit 5, demonstrates that Eric John Henry and ROMERO is the same person.

76.     At the time ROMERO became a member of the ZIDE DOOR, he was presented with a membership agreement.  This membership agreement included an agreement with COA.

77.     Within the membership agreement, were four requirements for membership:

    1. Personally accept Entheogenic Plants as your religious sacrament.

    2. Meet with another Church Member to verify agreement with the Church Of Ambrosia Statement of Doctrine, and be in agreement with the Church Of Ambrosia Membership Agreement by digitally signing it.

    3. Participation in a group worship at the Zide Door Location, unless an exception is approved by the Elders.

    4. Agree to follow all the rules of the church.

78.     Amongst the terms of agreement, were, in part, the following:

    9. I acknowledge the church is not a dispensary.

    10. I will not rely on, nor will I be able to purchase sacrament at the church.

    11. Any sacrament acquired at the church belongs to the members as a whole, and not to any individual patient or adult use member, and is intended to be consumed on site.

    12. Any donations made to church towards time expire when member exits the facility.

    13. All donations are exchanged with allocated worship space, and any

sacrament used during that time is co-owned by all members but shall be designated in accordance to the church staff specifications and instructions and members must select product from within that allotted time designation.

79.     Within the Ownership Acknowledgment & Agreement to a Lien on sacrament section of the agreement is the following:

> As a member of the Church, I am fully aware that I am in full ownership of the sacrament I receive and have ownership rights over said sacrament from the moment it is cultivated on behalf of the Church. That when I provide cash proceeds I am merely reimbursing the Church for the time, travel, laboratory testing, maintenance and upkeep of the sacrament provided within. I am by no means "paying for" or "purchasing" my sacrament as I already have ownership over said sacrament.

80.     A true and correct copy of the membership agreement signed by ROMERO, as Eric John Henry, is attached hereto, and incorporated herein at Exhibit 7.

81.     At the time ROMERO applied for his membership to ZIDE DOOR, he agreed that he accepts Enthnogenic Plants (including cannabis and mushrooms) as part of his religion.

82.     A true and Correct Copy of the membership application ROMERO filled out is attached hereto and incorporated herein at Exhibit 8.

83.     At the time ROMERO applied for the search warrant he also omitted the fact that the manufacture, possession, sales and distribution of cannabis are misdemeanors in the State of California (See *California Health and Safety Code* §§ 11358, 11359, 11360)

84.     On August 13, 2020, ROMERO executed the search warrant and searched the premises of ZIDE DOOR.

85.     During the search ROMERO forcibly opened one safe and damaged a total of five of the safes on the premises.

86.     ROMERO also seized paperwork, inventory logs dated August 13, 2020, a computer, cannabis and mushroom products, and cash totaling over $4500.00.

87.     A true and correct copy of the search warrant inventory is attached hereto at Exhibit 9 and incorporated herein.

88.     Plaintiffs are informed and believe that additional property, was seized which was not included within the search warrant inventory attached hereto at Exhibit 9.

**FIRST CAUSE OF ACTION**

**(RLUIPA: unjustified substantial burden on free exercise of religion, in violation of 42 U.S.C. § 2000cc)**

89.    Plaintiffs incorporate the preceding paragraphs as if stated fully herein.

90.    Defendant, OAKLAND, has imposed a substantial burden on the Plaintiffs' exercise of religion by implementing and imposing land use regulations in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution.

91.    The substantial burden that Defendant has imposed on Plaintiffs affects or, if removed, would affect, commerce with foreign nations, among the several States, or with Indian tribes. (42 U.S.C. § 2000cc(a)(2)(B)).

92.    The substantial burden Defendant has imposed on Plaintiffs was imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved. (42 U.S.C. § 2000cc(a)(2)(C))

93.    Defendants' actions substantially burden Plaintiffs' sincere exercise of religion, as defined in RLUIPA, by prohibiting Plaintiffs religious use of use of entheogenic plants, including cannabis and psilocybin, at all locations within OAKLAND, including the location of Plaintiffs' current operations.  In doing so Defendant, OAKLAND, has prohibited Plaintiffs from practicing their religion in any location within OAKLAND, including the 1216 10th Ave, Oakland location.

94.    Defendant, OAKLAND, cannot satisfy 42 U.S.C. § 2000cc(a)(l)(A) because it cannot demonstrate that imposition of the substantial burden on Plaintiffs furthers any compelling governmental interest.

95.    Defendant, OAKLAND, cannot satisfy 42 U.S.C. § 2000cc(a)(l)(B) because even if it could demonstrate that imposition of the substantial burden on Plaintiffs furthers a compelling interest, it cannot demonstrate that imposition of the substantial burden on Plaintiffs is the least restrictive means of furthering that compelling governmental interest.

96.    Because Defendant's conduct violates RLUIPA, Plaintiffs are entitled to appropriate relief, including damages, attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983

and 1988, and injunctive relief.

97.     Plaintiffs are entitled to exemplary damages because Defendant acted maliciously and in reckless and callous disregard of, or with deliberate indifference to, Plaintiffs' rights under RLUIPA.

98.     Plaintiffs are entitled to injunctive relief. Plaintiffs have no adequate remedy at law. The balance of the equities weighs in favor of "an injunction requiring Defendant to approve Plaintiffs' application to operate at its 1216 10th Ave, Oakland location. Plaintiffs will suffer irreparable harm without injunctive relief, and injunctive relief is reasonably necessary to protect Plaintiffs' rights under RLUIPA.

## SECOND CAUSE OF ACTION

**(RLUIPA: imposition and implementation of land use code on unequal terms, in violation of 42 U.S.C.§ 2000CC(b)(1))**

99.     Plaintiffs incorporate the preceding paragraphs as if stated fully herein.

100.     Defendant exercised its authority in a manner that treated Plaintiffs on less than equal terms with nonreligious assemblies and institutions, in violation of 42 U.S.C. § 2000cc(b)(l).

101.     Because Defendant's conduct violates RLUIPA, Plaintiffs are entitled to appropriate relief, including damages, attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988, and injunctive relief.

102.     Plaintiffs are entitled to exemplary damages because Defendant acted maliciously and in reckless and callous disregard of, or with deliberate indifference to, Plaintiffs' rights under RLUIPA.

103.     Plaintiffs are entitled to injunctive relief. Plaintiffs have no adequate remedy at law. The balance of the equities weighs in favor of "an injunction requiring Defendant to approve Plaintiffs' application to operate at its 1216 10th Ave, Oakland location. Plaintiffs will suffer irreparable harm without injunctive relief, and injunctive relief is reasonably necessary to protect Plaintiffs' rights under RLUIPA.

### THIRD CAUSE OF ACTION

**(RLUIPA: discrimination on the basis of religion, in violation of 42 U.S.C. § 2000CC(b)(2))**

104.    Plaintiffs incorporate the preceding paragraphs as if stated fully herein.

105.    Defendant imposed and implemented its land use regulations in a way that discriminated against Plaintiffs on the basis of their religion in violation of 42 U.S.C § 2000cc(b)(2). Defendant has permitted other religious organizations to use land in a manner that would have impacts that are substantially similar to the impacts of Plaintiffs' current land use. Defendant has not imposed the same land use requirement on other religious organizations that Defendant has imposed on Plaintiffs.

106.    Because Defendant's conduct violates RLUIPA, Plaintiffs are entitled to appropriate relief, including damages, attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988, and injunctive relief.

107.    Plaintiffs are entitled to exemplary damages because Defendant acted maliciously and in reckless and callous disregard of, or with deliberate indifference to, Plaintiffs' rights under RLUIPA.

108.    Plaintiffs are entitled to injunctive relief. Plaintiffs have no adequate remedy at law. The balance of the equities weighs in favor of "an injunction requiring Defendant to approve Plaintiffs' application to operate at its 1216 10th Ave, Oakland location. Plaintiffs will suffer irreparable harm without injunctive relief, and injunctive relief is reasonably necessary to protect Plaintiffs' rights under RLUIPA.

### FOURTH CAUSE OF ACTION

**(RLUIPA: discrimination on the basis of religion, in violation of 42 U.S.C. § 2000CC(b)(3))**

109.    Plaintiffs incorporate the preceding paragraphs as if stated fully herein.

110.    Defendant imposed and implemented its land use regulations in a way that discriminated against Plaintiffs on the basis of their religion in violation of 42 U.S.C § 2000cc(b)(3). Defendant has imposed or implemented a land use regulation in a manner that unreasonably limits religious assemblies, institutions, or structures within the City of Oakland, which limited and/or excluded Plaintiffs' current land use.

111.    Because Defendant's conduct violates RLUIPA, Plaintiffs are entitled to

appropriate relief, including damages, attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988, and injunctive relief.

112.    Plaintiffs are entitled to exemplary damages because Defendant acted maliciously and in reckless and callous disregard of, or with deliberate indifference to, Plaintiffs' rights under RLUIPA.

113.    Plaintiffs are entitled to injunctive relief. Plaintiffs have no adequate remedy at law. The balance of the equities weighs in favor of "an injunction requiring Defendant to approve Plaintiffs' application to operate at its 1216 10th Ave, Oakland location. Plaintiffs will suffer irreparable harm without injunctive relief, and injunctive relief is reasonably necessary to protect Plaintiffs' rights under RLUIPA.

### FIFTH CAUSE OF ACTION

**(42 U.S.C. § 1983: Substantial burden of free exercise of religion
in violation of the First Amendment)**

114.    Plaintiffs incorporate the preceding paragraphs as if stated fully herein.

115.    The framers of the Constitution, recognizing free exercise of religion as an inalienable right, secured its protection in the First Amendment to the Constitution. The Free Exercise Clause provides that Congress shall make no law "prohibiting the free exercise" of religion. This provision applies to Defendant through the Due Process Clause of the Fourteenth Amendment.

116.    In *Employment; Division. Dept. of Human Resources of Oregon v. Smith* (1990) 494 U.S. 872 (hereinafter *Smith*), the Supreme Court held that a law that substantially burdens the exercise of religion need not be justified by a compelling governmental interest if the law is neutral and of general applicability. However, if a law that substantially burdens the exercise of religion is either not neutral or not generally applicable, the government may only justify the burden on religious exercise by proving that the law is narrowly tailored to further a compelling governmental interest.

117.    Defendant's application of the land use code to Plaintiffs substantially burdened Plaintiffs' exercise of religion in a variety of ways, including by preventing them from practicing their religion within the building they occupy, and preventing them from practicing their religion elsewhere within the City of Oakland.

118.    Defendant's land use code is neither neutral nor generally applicable in fact for a variety of reasons, each of which is sufficient, standing alone, to warrant strict scrutiny under the First Amendment:

a. Defendant's denial of Plaintiffs' application was based in part on hostility toward Plaintiffs' religious beliefs and practices, including its sacramental use of cannabis and psilocybin.

b. Defendants' land use ordinance application was not based on a neutral, general application of the California's Adult Use of Marijuana Act.  Under California's Adult Use of Marijuana Act, a local jurisdiction may regulate the sale and distribution of cannabis. Defendants' Commercial cannabis ordinance authorizes the sales and exchange for entrance to an event.  It does not authorize the religious use of cannabis.

119.    Defendant, OAKLAND, cannot demonstrate that it has a compelling interest in substantially burdening Plaintiffs' exercise of religion.

120.    Even if Defendant could demonstrate that it has a compelling interest in substantially burdening Plaintiffs' exercise of religion. Defendant cannot demonstrate that the burden is narrowly tailored to further any compelling government interest.

121.    However, *Smith* is inconsistent with the original public meaning of the Free Exercise Clause of the First Amendment, and should be overruled.  *Smith* failed to interpret the Clause in light of strong historical evidence that it embodies a substantive liberty interest in religious freedom that often overrides conflicting law.  *Smith* placed religion in a compromised position unimagined by the Founding Fathers. As one commentator has put it, there is no reason to have a Free Exercise Clause at all if religious liberty simply means "allowing religious people to act in conformity with the state's laws and rules—freedom to do things that society already thinks good and proper." Michael Stokes Paulsen, *The Priority of God: A Theory of Religious Liberty*, (2013) 39 Pepp. L. Rev. 1159 at 1186.

122.    Because Defendant's conduct violates Plaintiffs' First Amendment right to freely exercise their religion, Plaintiffs are entitled to damages, attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988, and injunctive relief.

123.    Plaintiffs are entitled to exemplary damages because Defendant acted maliciously and in reckless and callous disregard of, or with deliberate indifference to Plaintiffs' First

Amendment right to freely exercise their religion.

124.    Plaintiffs are entitled to injunctive relief. Plaintiffs have no adequate remedy at law. The balance of the equities weighs in favor of an injunction requiring Defendant to approve Plaintiffs' application. Plaintiffs will suffer irreparable harm without injunctive relief, and injunctive relief is reasonably necessary to protect Plaintiffs' rights under the First Amendment.

## SIXTH CAUSE OF ACTION

**(42 U.S.C. § 1983: disparate treatment of religions, in violation of the First Amendment and Fourteenth Amendment)**

125.    Plaintiffs incorporate the preceding paragraphs as if stated fully herein.

126.    Defendant, OAKLAND, has violated Plaintiffs' First Amendment and Fourteenth Amendment rights not to be discriminated against on the basis of their religious beliefs and affiliation.

127.    Defendant has permitted other religious organizations to use land in a manner that would have impacts that are substantially similar to the impacts of Plaintiffs' land use.

128.    Defendant has permitted other organizations to use land in a manner that would have impacts that are substantially similar to the impacts of Plaintiffs' land use concerning the use of cannabis.

129.    Because Defendants' conduct violates the Free Exercise Clause and Establishment Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs are entitled to damages, attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988, and injunctive relief.

130.    Plaintiffs are entitled to exemplary damages because Defendants acted maliciously and in reckless and callous disregard of, or with deliberate indifference to. Plaintiffs' First Amendment and Fourteenth Amendment rights.

131.    Plaintiffs are entitled to injunctive relief. Plaintiffs have no adequate remedy at law. The balance of the equities weighs in favor of an injunction requiring Defendant, OAKLAND, to approve Plaintiffs' application. Plaintiffs will suffer irreparable harm without injunctive relief, and injunctive relief is reasonably necessary to protect Plaintiffs' rights under the First Amendment and Fourteenth Amendment.

### SEVENTH CAUSE OF ACTION

### (42 U.S.C. § 1983: Unlawful Search and Seizure)

132.    Plaintiffs incorporate the preceding paragraphs as if stated fully herein.

133.    Defendants, OAKLAND POLICE DEPARTMENT, and ROMERO unlawfully search and seized plaintiffs' property without a valid search warrant, and without probable cause.

134.    As a direct and proximate result of Defendants' unlawful actions as alleged herein, Defendants deprived Plaintiffs of their Fourth Amendment Right to be free from unreasonable search, unreasonable seizure.

135.    As a further direct and proximate result of Defendants' unlawful actions, which were willful, wanton, malicious and oppressive or negligent as alleged herein, Plaintiff suffered loss of property and other damages entitling them to compensation under 42 U.S.C. sections 1983 and 1985 according to proof, as well as reasonable attorneys fees incurred in pursuing these claims under 42 U.S.C. Section 1988.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury on all of the above causes of action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief as to all causes of action:

1.  A permanent injunction requiring Defendant, OAKLAND, to promptly take all action necessary to formally approve the application and to cooperate with all slate agencies regarding additional inspections, certifications, approvals, and permits;

2.  A judgment declaring that the Plaintiffs' religious use of entheogenic plants, including cannabis and psilocybin may not be considered in any applications for permits, including but not limited to an application under *OMC* § 5.02.010;

3.  A judgment awarding Plaintiff general, damages to plaintiff in an amount to be determined by the trier of fact as sufficient to compensate the plaintiff for

the injuries described in this complaint;

4. An award of punitive damages to plaintiff in an amount to be determined by the trier of fact as sufficient to punish each defendant against whom these damages are awarded and sufficient to deter similar conduct in the future by these defendants;

5. A judgment awarding Plaintiff reasonable attorneys fees;

6. A judgment awarding Plaintiff his costs of suit; and

7. Such other and further relief as the Court deems proper.

Dated: August 11, 2022

-------------------/s/ Editte Lerman
Editte Lerman
Attorney for Plaintiffs
**Church Of Ambrosia,**
**Zide Door Church Of**
**Entheogenic Plants**

Exhibit 1

This is an archive of a past election.
See http://www.smartvoter.org/ca/alm/ for current information.

 **League of Women Voters of California Education Fund**

Alameda County, CA                                    November 2, 2004 Election



## Measure Z
## Marijuana Law Enforcement
## City of Oakland

87,201 / **65.2%** **Yes** votes ...... 46,563 / **34.8%** **No** votes

**See Also: Index of all Measures**

**Results as of Dec 15 1:28pm, 100.0% of Precincts Reporting** (257/257)

Information shown below: Summary | Fiscal Impact | Impartial Analysis |
Arguments | Full Text

*Shall the ordinance requiring the City of Oakland (1) to make
law enforcement related to private adult cannabis (marijuana)
use, distribution, sale, cultivation and possession, the City's
lowest law enforcement priority; (2) to lobby to legalize, tax and
regulate cannabis for adult private use, distribution, sale,
cultivation and possession; (3) to license, tax and regulate
cannabis sales if California law is amended to allow such
actions; and (4) to create a committee to oversee the ordinance's
implementation, be adopted?*

### Summary Prepared by City Attorney:

Title: Cannabis Regulation - An Ordinance that Would Require that
the City (1) Establish a System to License, Tax and Regulate
Cannabis (Marijuana) Sales As Soon as Possible under California
Law; (2) Create a Committee to Oversee the Ordinance's
Implementation and Disbursement of Revenue from Licensing and
Taxation of Businesses that Sell Cannabis; (3) Adopt Law
Enforcement Policies Related to Cannabis; and (4) Advocate for
Changes in Laws to Support Implementation and Goals of the
Ordinance

Summary: This proposed ordinance would require that the City of
Oakland establish a system to license, tax and regulate cannabis for
adult use as soon as possible under California law and adopt
regulations regarding licensing and taxation of businesses that sell
cannabis. The proposed ordinance makes investigation, citation,
and arrest for private adult cannabis offenses Oakland's lowest law

## News and Analysis

### *Oakland Tribune*

- Measure Z would ease pot use
  laws; Supporters hope Oakland
  initiative would set a precedent
  for state - October 18, 2004

Suggest a link related to
Measure Z

Links to sources outside of Smart Voter
are provided for information only and
do not imply endorsement.

enforcement priority.

The proposed ordinance would require that the City create an eleven (11) member committee to oversee the implementation of the ordinance. The Committee's responsibilities include (1) ensuring timely implementation of the ordinance's provisions and (2) overseeing disbursement of revenues generated from licensing, regulation and taxation of licensed cannabis businesses to ensure that revenues are spent on City services such as schools, libraries and youth programs.

The ordinance also requires that the City advocate for changes in state and other laws that would allow taxation and regulation of cannabis and end prosecution, arrest, investigation and imprisonment for adult, private cannabis offenses.

s/JOHN RUSSO City Attorney

### Fiscal Impact from City Auditor:

SUMMARY

This measure authorizes the City of Oakland to submit to the voters a ballot measure that would require the City to:

1. make law enforcement related to private adult cannabis (marijuana) use the lowest law enforcement priority;

2. lobby to legalize, tax and regulate cannabis (marijuana) for adult private use, distribution, sale, cultivation and possession;

3. license, tax and regulate cannabis (marijuana) sales if California law is amended to allow and authorize such actions; and

4. create a Community Committee to oversee the ordinance's implementation. The "lowest law enforcement priority" provision shall not apply to minors. The Community Oversight Committee (to insure the timely implementation of the Oakland Cannabis Regulation) shall be composed of members appointed by the City Council, the Mayor, the City Auditor, and the City Manager. The committee's responsibilities shall include implementation of the Lowest Law Enforcement Priority policy; making recommendations; monitoring the disbursement of funds generated by the cannabis revenue; and reporting annually to the Council on the implementation of this ordinance. The ordinance does not contain a specific provision to finance the costs of performing annual audits.

FISCAL IMPACT

The City of Oakland has not prepared an estimate related to changing enforcement priorities based on the passage of this measure. Therefore it is difficult to render an opinion with insufficient data.

s/ROLAND E. SMITH, CPA, CFS City Auditor

### Impartial Analysis from City Attorney

This voter initiative would make private adult cannabis (marijuana) offenses the City of Oakland's lowest law enforcement priority (€6); require the City to lobby to eliminate criminal penalties for private adult cannabis offenses (€8) and license, tax and regulate cannabis businesses if State of California laws are amended to allow such actions (€5); and create an oversight committee (€7).

Two of the Measure's Provisions are Unconstitutional

Sections 5 and 8 of this measure are unconstitutional and therefore unenforceable. Section 5 requires that the City of Oakland license, tax and regulate the sale of cannabis for adult use if state law is amended to permit such actions. Section 8 requires that the City of Oakland lobby for changes in laws to (1) eliminate criminal penalties for private adult cannabis use, distribution, sale, cultivation and possession and (2) allow cities and counties to license, regulate and tax cannabis businesses.

These provisions are unconstitutional because they do not enact a law. Neither the lobbying provision, nor the requirement that the City pass legislation that would regulate and tax cannabis businesses, if state law is amended, enacts a law.

The initiative power may be exercised only to adopt or reject laws. Cal. Const. Art. 11, Section 8; American Federation of Labor v. Eu, 36 Cal. 3d 687, 708 (1984) (invalidating an initiative that required state legislature to ask Congress to change federal law); Marblehead v. City of San Clemente, 226 Cal.App.3d 1504, 1509, 1510 (1991) (court struck down an initiative that directed City Council to amend the General Plan rather than amending the General Plan directly); Fishman v. City of Palo Alto, 86 Cal.App.3d 506, 509 (1978).

The City must Comply with the Other Provisions of the Measure if it Passes If this initiative passes, the City must (1) make investigation, citation and arrest of private adult cannabis offenses (e.g. use, distribution, sale, cultivation and possession of cannabis for medical and non-medical purposes) its lowest law enforcement priority; and (2) create an eleven member (11) oversight committee to "oversee" the ordinance's implementation.

Passage of this Measure will not Change California and Federal Law Both of which Prohibit Non-Medical Cannabis Use

Private adult cannabis offenses would remain unlawful if this measure passes; both California and federal law prohibit non-medical use, possession, cultivation, distribution of cannabis. The City would continue to have the power to enforce laws prohibiting non-medical use, possession, cultivation, distribution and sale of cannabis, although the enforcement would be its lowest law enforcement priority.

The terms "lowest law enforcement priority" and "private adult cannabis offenses" are not defined in the measure. The common sense meaning of "lowest law enforcement priority" would require that the City make all other law enforcement priorities a higher priority. "Private adult cannabis offenses" presumably refers to marijuana use, cultivation, sale, possession, distribution that occurs in a private place, such as an adult's home. Nothing in this measure would limit the City's power to arrest, cite and investigate individuals for such activity so long as the enforcement action is consistent with the lowest law enforcement priority policy.

s/JOHN RUSSO City Attorney

### Arguments For Measure Z

The federal government's war on drugs has been costly, ineffective, and unjust. Criminalizing cannabis (marijuana) has unfairly imprisoned thousands of non-violent offenders, including a disproportionate number of people of color.

Measure Z allows Oakland police to focus their time and resources on fighting violent crime and reducing the murder rate, instead of wasting their time on adult nonviolent marijuana offenses.

Every year California spends $150 million to arrest, prosecute and imprison marijuana offenders. It makes more economic sense to raise money by taxing and regulating the adult use of marijuana, instead of spending money to criminalize it.

Revenue raised will help pay for vital city services like schools, libraries, and health care. Furthermore, allowing marijuana to be sold by

### Arguments Against Measure Z

Marijuana growers, distributors and advocates from outside Oakland are spending hundreds of thousands of collars on politicians and consultants to pass this Initiative. Why? Because, if passed, this Initiative would force the City of Oakland to spend your TAX DOLLARS to lobby for statewide legalization of RECREATIONAL MARIJUANA USE.

It would require Oakland government to appoint and staff a committee to study how to sell and distribute marijuana.

The Initiative would make Oakland the only California City that doesn't enforce against marijuana production, distribution and sales. Taxpayers would bear the health and safety costs of an unregulated mega-marketplace for marijuana buyers and sellers form all over the State.

8/3/22, 10:56 AM

licensed businesses will get drug dealers off the streets and break their hold on our neighborhoods.

Measure Z makes it easier for medical patients to buy medical marijuana from licensed Oakland businesses. Patients deserve safe, secure and affordable access to medicine. While we can't change federal law, we can instruct our local police not to arrest or harass marijuana users. Measure Z controls marijuana sales; it does not legalize sales on the streets, near schools or to minors. It does not promote marijuana use, or allow broadcast or billboard advertising.

The Drug War has failed. It's time for a new approach. That's why community groups, elected officials, educators, religious leaders, and doctors all agree: Measure Z is the right thing to do. Measure Z is endorsed by the Metropolitan Greater Oakland Democratic Club, the Family Council on Drug Awareness, the Center on Juvenile and Criminal Justice, California Superior Court Judge James P. Gray, and many others. Please join us in voting YES ON MEASURE Z. For more information, please visit http://www.YesonZ.org.

s/NATE MILEY Alameda County Supervisor, District 4

s/DR. FRANK LUCIDO, MD Family Practice Physician

s/DAN SIEGEL Oakland School Board Member

s/THE REV. HAROLD MAYBERRY Minister, First African Methodist Episcopal (FAME) Church of Oakland

s/DESLEY BROOKS Oakland City Councilmember, District 6

### Rebuttal to Arguments For
Measure Z does nothing to stop the federal government's war on drugs. Instead, it will weaken Oakland's ability to keep the peace in neighborhoods where desperate young men lose

This Initiative DOES NOT relate to medical marijuana, and threatens Oakland's medical marijuana program already in effect.

This Initiative DOES NOT allow Oakland to tax or regulate marijuana sales until the state government legalizes marijuana sales for recreational use. That won't happen anytime soon! Oakland cannot afford this Initiative given the City's many unfunded priorities, such as violence prevention and fixing potholes. This Initiative provides NO RESOURCES for enforcement against sales to teenagers and children and NO MONEY to pay for treatment of smoking-related illnesses.

This Initiative threatens Oakland's carefully implemented medical marijuana program. Under this program, the City of Oakland has licensed nonprofit organizations to dispense quality and safe medicinal marijuana to those with health needs.

If passed, this reckless measure would flood our streets with unsafe and unregulated marijuana. It would invite unwelcomed attention from federal prosecutors who are eager to make an example of Oakland by shutting down our medical marijuana providers.

THE CITY ATTORNEY SAYS THIS INITIATIVE IS UNCONSTITUTIONAL AND ILLEGAL.

Don't put Oakland's medical marijuana patients, safety and tax dollars at risk for a reckless campaign to benefit marijuana growers and distributors! VOTE NO ON MEASURE Z.

s/DANNYWAN Oakland City Councilmember

s/DAVID KAKISHIBA School Board Director

s/ROBERT L. JACKSON Bishop "Bob" Jackson Acts Full Gospel Church

s/FRAN MATARRESE Community Leader

their lives over drug sales.

Measure Z does not help the occasional pot smoker. California law governs marijuana use and already treats mere possession of marijuana like a parking ticket.

Measure Z offers nothing to keep our young people out of prison. It just floods our streets with more drugs and invites federal and state law enforcement to increase arrests of our young people

Measure Z is outside interests and marijuana marketers using Oakland for social experimentation. The top three donors to this measure are from New York, San Francisco, and Washington D.C., and they've already shelled out more than $70,000!

Oakland already suffers from people coming from the suburbs to buy their drugs here. Yet, Oakland won't see a dime from marijuana sales because a city cannot legalize marijuana or tax it.

It would have been much fairer to start Measure Z in Beverly Hills where young people of color are not being gunned down in street corner drug disputes _ disputes that include marijuana as well as crack and heroin. Few dealers specialize in one drug.

This measure won't help medical marijuana patients. Oakland already ensures that there are several well managed facilities that offer medical marijuana.

Don't start this social experiment in Oakland. It is unconstitutional and will cost Oakland in lives and dollars. Vote NO on Measure Z.

s/JOSEPH J. HARABURDA President & CEO Oakland Metropolitan Chamber of Commerce

s/LARRY E. REID Councilmember, District 7

s/ELLEN WYRICK PARKINSON West Oakland Community Leader.

**Rebuttal to Arguments Against**

REBUTTAL TO ARGUMENT AGAINST MEASURE Z If the opponents of Measure Z really want to help medical marijuana patients, they should listen to those patients and the doctors who treat them and support Measure Z.

Opponents claim the city provides for medical patients; but the fact is Oakland has SHUT DOWN most of our medical marijuana dispensaries, forcing patients onto the streets. Measure Z makes it easier for patients to have safe access to medical marijuana. That's why patients and doctors support Measure Z.

Measure Z is a citizen initiative signed by 23,000 Oakland voters. It's a sensible approach that makes private adult marijuana offenses the lowest police priority for Oakland, as it is in Seattle. According to the Seattle Times "despite predictions of naysayers, there is no evidence of widespread public pot consumption as a result of the measure."

Measure Z controls marijuana sales; it does not legalize sales on the streets, near schools or to minors. It does not promote marijuana use, or allow broadcast or billboard advertising. Opponents claim Measure Z could cost the city money; in fact it raises money for vital city services by allowing for the taxed and regulated sale of marijuana.

People who fear reform often lay claims of unconstitutionality. They said that about the California medical marijuana initiative, Prop 215, but the initiative passed and took effect. Citizens have a constitutional right to voice their opinions.

The Drug War has failed. It's time for a new approach. That's why doctors, nurses, and patients agree: Yes on Z.

s/MARTHA KUHL California Nurses Association

s/DON PERATA California State Senator,
District 9

s/DR. MIKE ALCALAY, MD HIV Education
and Prevention Project of Alameda County

s/JANE JACKSON Medical Marijuana Patient;
Founder, Mayor's Commission on Persons with
Disabilities; Member, Oakland Medical
Marijuana Task Force

s/STEPHANIE SHERER Americans for Safe
Access

## Full Text of Measure Z

WHEREAS, the City Council does hereby submit to the qualified electors of the City of Oakland the
aforesaid proposed initiative ballot measure to be voted upon at the General Municipal Election
consolidated with the Statewide General Election to be held on Tuesday, November 2, 2004, now
therefore be it

RESOLVED: that the proposed initiative ballot measure text shall read as follows:

Section 1: TITLE

Oakland Cannabis Regulation and Revenue Ordinance

Section 2: FINDINGS

The people of Oakland, California find as follows:

WHEREAS it is a goal of the people of Oakland to keep drugs off the streets and away from children,
and to eliminate street dealing and violent crime; and

WHEREAS each year California spends over $150 million enforcing cannabis (marijuana) laws,
expending valuable law enforcement resources that would be better spent on fighting violent and
serious crimes; and

WHEREAS medical and governmental studies have consistently found cannabis to be less dangerous
than alcohol, tobacco and other drugs; and

WHEREAS otherwise law-abiding adults are being arrested or imprisoned for nonviolent cannabis
offenses, clogging our courts and jails; and

WHEREAS controlling and regulating cannabis so that it is only sold by licensed businesses would
undermine the hold of street dealers on our neighborhoods; and

WHEREAS in the face of the severe state and local budget crisis, the revenues from taxing and
licensing cannabis would help fund vital Oakland city services; and

WHEREAS the current laws against cannabis have needlessly harmed patients who need it for medical purposes, and impeded the development of hemp for fiber, oil, and other industrial purposes; and

WHEREAS it is the hope of the people of Oakland that there will be state and federal law reform that will eliminate the problems and costs caused by cannabis prohibition;

THEREFORE the people of the City of Oakland do hereby enact the following ordinance establishing the cannabis policy of the city.

Section 3: DEFINITION

"Cannabis" - Means "marijuana" as currently defined in California Health & Safety Code Section 11018.

Section 4: PURPOSE

The purpose of this ordinance is:

a) To direct the City of Oakland to tax and regulate the sale of cannabis for adult use, so as to keep it off the streets and away from children and to raise revenue for the city, as soon as possible under state law.

b) To direct the Oakland Police Department to make investigation, citation, and arrest for private adult cannabis offenses the lowest law enforcement priority, effective immediately upon the passage of this ordinance.

c) To advocate for changes in state law (and at other levels as necessary) to authorize the taxation and regulation of cannabis and eliminate criminal penalties for private, adult cannabis use.

Section 5: REGULATION

The City of Oakland shall establish a system to license, tax and regulate cannabis for adult use as soon as possible under California law. At that time, the City Council shall promulgate regulations that include, but are not limited to, the following provisions consistent with California law:

a) The sale and distribution to minors will be strictly prohibited;

b) The city shall establish a licensing system for cannabis businesses, with regulations to assure good business practices, compliance with health and safety standards, access for persons with disabilities, and nuisance abatement;

c) Minors shall not be permitted in areas where cannabis is sold, nor shall minors be employed by licensed cannabis businesses;

d) No business licensed to sell cannabis will be located within 600 feet of a school;

e) Cannabis businesses shall be required to pay taxes and licensing fees;

f) The public advertising of cannabis through television, radio or billboards will be prohibited; and

g) Onsite consumption shall be licensed so as to keep cannabis off the streets and away from children, subject to reasonable air quality standards.

## Section 6: LOWEST LAW ENFORCEMENT PRIORITY

a) The Oakland Police Department shall make investigation, citation, and arrest for private adult cannabis offenses Oakland's lowest law enforcement priority.

b) This "lowest law enforcement priority" policy shall not apply to distribution of cannabis to minors, distribution or consumption of cannabis on streets or other public places, or motor vehicle violations.

## Section 7: COMMUNITY OVERSIGHT COMMITTEE

A Community Oversight Committee shall be appointed to oversee the implementation of the Oakland Cannabis Regulation and Revenue Ordinance. The Committee will be composed of:

1 community member appointed by each member of the Oakland City Council,

1 community member appointed by the Mayor of Oakland,

1 representative of the Oakland City Auditor,

1 representative of the Oakland City Manager.

Responsibilities of the Committee shall include:

a) Ensure timely implementation of this ordinance

b) Oversee the implementation of the Lowest Law Enforcement Priority policy;

c) Make recommendations to the Oakland City Council regarding appropriate regulations, in accordance with Section 5 above;

d) Oversee the disbursement of revenues generated through the sale of cannabis by licensed cannabis busi- nesses to assure that funds go to vital city services such as schools, libraries and youth programs; and

e) Report annually to the Council on implementation of this ordinance.

## Section 8: ADVOCACY FOR LEGISLATIVE REFORM

The City of Oakland shall advocate, through its lobbyist and other city officers, for changes to state law (and laws at other levels of government as necessary) to support the goals and implementation of this ordinance. Legislative changes to be advocated include:

a) Allow for taxation and regulation of cannabis for adults;

b) Grant local control to cities and counties to license and regulate cannabis businesses, and collect appropriate fees and/or taxes; and

c) End the prosecution, arrest, investigation and imprisonment for adult, private cannabis offenses.

## Section 9: SEVERABILITY

If any provision of this ordinance or the application thereof to any person or circumstance is held invalid, the remainder of the ordinance and the application of such provisions to other persons or circumstances shall not be affected thereby.

---

Alameda Home Page ‖ Statewide Links ‖ About Smart Voter ‖ Feedback

---

Created: December 15, 2004 13:28 PST

Smart Voter <*http://www.smartvoter.org/*>

Copyright © League of Women Voters of California Education Fund   *http://ca.lwv.org*

*The League of Women Voters neither supports nor opposes candidates for public office or political parties.*

Exhibit 2

FILED
OFFICE OF THE CITY CLERK
OAKLAND

19 MAY 15 PM 1:46

Approved as to Form and Legality

*[signature]*
City Attorney's Office

# OAKLAND CITY COUNCIL

## RESOLUTION NO. — 87731 — C.M.S.

### INTRODUCED BY COUNCILMEMBER NOEL GALLO

**RESOLUTION SUPPORTING ENTHEOGENIC PLANT PRACTICES AND DECLARING THAT THE INVESTIGATION AND ARREST OF INDIVIDUALS INVOLVED WITH THE ADULT USE OF ENTHEOGENIC PLANTS ON THE FEDERAL SCHEDULE 1 LIST[1] BE AMONGST THE LOWEST PRIORITY FOR THE CITY OF OAKLAND**

**WHEREAS**, Entheogenic Plants, based on the term "entheogen", originally conceived by Ott, Ruck, and other colleagues from a working group of anthropologists and ethnobotanists in 1979; and defined herein as the full spectrum of plants, fungi, and natural materials deserving reverence and respect from the perspective of the individual and the collective, that can inspire personal and spiritual well-being[i], can benefit psychological[ii] and physical wellness[iii], and can reestablish human's inalienable and direct relationship to nature; and

**WHEREAS**, substance abuse[iv], addiction, recidivism[v], trauma, post-traumatic stress symptoms, chronic depression, severe anxiety[vi], end-of-life anxiety, grief[vii], diabetes[viii], cluster headaches[ix], and other conditions are plaguing our community and that the use of Entheogenic Plants have been shown to be beneficial to the health and well-being of individuals and communities in addressing these afflictions via scientific and clinical studies and within continuing traditional practices, which can catalyze profound experiences of personal and spiritual growth; and

**WHEREAS,** practices with Entheogenic Plants have long existed and have been considered to be sacred to human cultures and human interrelationships with nature for thousands of years[x], and continue to be enhanced and improved to this day by religious and spiritual leaders, practicing professionals, mentors, and healers throughout the world, many of whom have been forced underground; and

---

[1] Refers to plants and natural sources (as defined herein), such as mushrooms, cacti, iboga containing plants and/or extracted combinations of plants similar to Ayahuasca; and limited to those containing the following types of compounds: indole amines, tryptamines, phenethylamines.

**WHEREAS**, seeking to improve their health and well-being through the use of Entheogenic Plants use them in fear of arrest and prosecution; and

**WHEREAS**, the Entheogenic Plant practices of certain groups are already explicitly protected in the U.S. under the doctrine of religious freedom -- the Native American Church's use of peyote and the use of ayahuasca by two other churches, a Santo Daime congregation and the União do Vegetal; and

**WHEREAS**, The United Nations considers Entheogenic Plant material used for ritual purposes as excluded from Schedule 1 substances; and

**WHEREAS,** Entheogenic plants containing ibogaine, for example, have been shown to alleviate treatment resistant cases of opiate and methamphetamine addiction at significantly higher rates than all other treatments for addiction[xi]. In addition, ibogaine is reported to be beneficial for addiction therapy related to specific work-related PTSD encountered by first responders such as EMT, police, and firefighters, as well as military veterans; and

**WHEREAS,** Entheogenic Plants or combinations of plants such as Ayahuasca that contain forms of DMT, a naturally occurring compound in the human body that is listed as a Schedule 1 substance, can lead to experiences that are reported as mystical or experientially similar to near death experiences[xii] and that are can be demonstrably beneficial in treating addiction[xiii], depression[xiv], PTSD[xv], and in catalyzing profound experiences of personal[xvi] and spiritual growth[xvii]; and

**WHEREAS,** Entheogenic cacti that contain phenethylamine compounds such as mescaline can be beneficial in healing drug and alcohol addiction[xviii] and for individual spiritual growth[xix], and have been utilized in sacred initiation and community healing by diverse religious and cultural traditions for millennia and continuing use as religious sacraments in modern times; and

**WHEREAS,** psilocybin, naturally occurring in Entheogenic mushrooms, can alleviate end-of-life anxiety for hospice and terminal cancer patients[xx], can reduce prison recidivism[xxi], and can effectively treat substance abuse, depression[xxii], cluster headaches[xxiii]; and

**WHEREAS**, a Johns Hopkins University study on "healthy-normals" found that psilocybin can occasion mystical-type experiences, which were considered one of the top five most meaningful experiences in a subject's life for over 75% of their subjects within the first year after the study, and also found continuing positive life-style changes after a 14-month follow-up; and

**WHEREAS,** the City of Oakland wishes to declare its desire not to expend City resources in any investigation, detention, arrest, or prosecution arising out of alleged violations of state and federal law regarding the use of Entheogenic Plants; now, therefore, be it

**RESOLVED**: That the Mayor and City Council hereby declare that it shall be the policy of the City of Oakland that no department, agency, board, commission, officer or employee of the city, including without limitation, Oakland Police Department personnel, shall use any city funds or resources to assist in the enforcement of laws imposing criminal penalties for the use and possession of Entheogenic Plants by adults; and be it

**FURTHER RESOLVED:** That the Oakland City Council directs the City Administrator to instruct the City's state and federal lobbyists to work in support of decriminalizing all Entheogenic Plants and plant-based compounds that are listed on the Federal Controlled Substances Schedule 1; and be it

**FURTHER RESOLVED:** That the Mayor and City Council hereby declare that it shall be the policy of the City of Oakland that the investigation and arrest of adult persons for planting, cultivating, purchasing, transporting, distributing, engaging in practices with, and/or possessing Entheogenic Plants or plant compounds on the Federal Schedule 1 list shall be amongst the lowest law enforcement priority for the City of Oakland; and be it

**FURTHER RESOLVED:** That the Mayor and City Council call upon the Alameda County District Attorney to cease prosecution of persons involved in the use of Entheogenic Plants or plant-based compounds on the Federal Schedule 1 List; and be it

**FURTHER RESOLVED:** That if any provision of this resolution is declared by a court of competent jurisdiction to be contrary to any statute regulation or judicial decision or its applicability to any agency person or circumstances is held invalid the validity of the remainder of this resolution and it applicability to any other agency person or circumstance shall not be affected.


IN COUNCIL, OAKLAND, CALIFORNIA,          **JUN 0 4 2019**

PASSED BY THE FOLLOWING VOTE:

AYES –   FORTUNATO BAS, GALLO, GIBSON MCELHANEY, KALB, ~~REID~~ TAYLOR, THAO AND
         PRESIDENT KAPLAN — 7

NOES – 0

ABSENT – 0

ABSTENTION – 0

Excused - 1 Reid

ATTEST: _____
                    LATONDA SIMMONS
          City Clerk and Clerk of the Council of the
                 City of Oakland, California

[i] Entheogens for Personal and Spiritual Growth

Frecska, E., et al. (2012). Enhancement of Creative Expression and Entoptic Phenomena as After-Effects of Repeated Ayahuasca Ceremonies. *Journal of Psychoactive Drugs 44*(3), pp. 191-199.

Hartogsohn, I. (2018). The Meaning-Enhancing Properties of Psychedelics and Their Mediator Role in Psychedelic Therapy, Spirituality, and Creativity. *Frontiers in Neuroscience, 12* (129). doi:10.3389/fnins.2018.00129

MacLean, K., et al. (2011). Mystical experiences occasioned by the hallucinogen psilocybin lead to increases in the personality domain of openness. *Journal of Psychopharmacology, 25*(11) 1453–1461.

Móró, L., et al. (2011) Voice of the Psychonauts: Coping, Life Purpose, and Spirituality in Psychedelic Drug Users. *Journal of Psychoactive Drugs, 43* (3), pp. 188-198. DOI: 10.1080/02791072.2011.605661

Nour, M., et al. (2017): Psychedelics, Personality and Political Perspectives. *Journal of Psychoactive Drugs*. DOI:10.1080/02791072.2017.1312643

Sweat, N., et al. (2016). The Associations of Naturalistic Classic Psychedelic Use, Mystical Experience, and Creative Problem Solving. *Journal of Psychoactive Drugs, 48* (5), pp. 344-350, DOI: 10.1080/02791072.2016.1234090

[ii] Entheogens and Psychological Wellness

Frecska E., et al., (2016). The Therapeutic Potentials of Ayahuasca: Possible Effects against Various Diseases of Civilization. *Frontiers in Pharmacology, 7*(35). doi:10.3389/fphar.2016.00035

McKenna, D. (2004). Clinical investigations of the therapeutic potential of ayahuasca: rationale and regulatory challenges. *Pharmacology & Therapeutics 102*(2), pp. 111-129.

dos Santos, R. et al. (2017). Effects of the Natural β- Carboline Alkaloid Harmine, a Main Constituent of Ayahuasca, in Memory and in the Hippocampus: A Systematic Literature Review of Preclinical Studies. *Journal of Psychoactive Drugs, 49* (1), pp. 1-10, DOI: 10.1080/02791072.2016.1260189

Wilcox, J. (2014). Psilocybin and Obsessive-Compulsive Disorder. *Journal of Psychoactive Drugs, 46* (5), pp. 393-395. DOI: 10.1080/02791072.2014.963754

[iii] Entheogens and Physical Wellness

Djamshidian, A., et al. (2015). "Banisteriopsis caapi, a Forgotten Potential Therapy for Parkinson's Disease?" Movement Disorders Clinical Practice: n/a-n/a.

Liu, X., et al., (2017) Harmine is an inflammatory inhibitor through the suppression of NF-kB signaling. *Biochemical and Biophysical Research Communications,* http://dx.doi.org/10.1016/j.bbrc.2017.05.126

Ly et al. (2018). Psychedelics Promote Structural and Functional Neural Plasticity. *Cell Reports 23*, pp. 3170–3182.

McCleary, J., et al., (1960). Antibiotic activity of an extract of peyote (Lophophora

Williamii). *Economic Botany, 14*(3), pp. 247-249.

dos Santos, R. (2014) Immunological Effects of Ayahuasca in Humans. *Journal of Psychoactive Drugs, 46* (5), pp. 383-388.

Samoylenkoa, V., et al. (2010). Banisteriopsis caapi, a unique combination of MAO inhibitory and antioxidative constituents for the activities relevant to neurodegenerative disorders and Parkinson's disease. *Journal of Ethnopharmacology, 127* (2), pp. 357–367. doi:10.1016/j.jep.2009.10.030.

[iv] Entheogens and Substance Abuse

Bogenschutz, M., et al. (2015). Psilocybin-assisted treatment for alcohol dependence: A proof-of-concept study. *Journal of Psychopharmacology 29*(3), pp. 289-299.

Bogenschutz, M., and Forcehimes, A. (2017). Development of a Psychotherapeutic Model for Psilocybin-Assisted Treatment of Alcoholism. *Journal of Humanistic Psychology, 57*(4), pp. 389–414.

Johnson, M. et al. (2017). An online survey of tobacco smoking cessation associated with naturalistic psychedelic use. *Journal of Psychopharmacology 31* (7), pp. 841-850.

de Veen, B. (2017) Psilocybin for treating substance use disorders? *Expert Review of Neurotherapeutics, 17* (2), pp. 203-212. DOI: 10.1080/14737175.2016.1220834

[v] Entheogens and Recidivism

Romero, S. (March 28, 2015). In Brazil, some inmates get therapy with hallucinogenic tea. *The New York Times*.

[vi] Entheogens and Anxiety

Sarris, J., et al. (2013). "Plant-based medicines for anxiety disorders, part 2: a review of clinical studies with supporting preclinical evidence." CNS Drugs 27(4), pp. 301-319.

[vii] Entheogens and Grief

González, D., et al. (2017). Potential Use of Ayahuasca in Grief Therapy. *OMEGA— Journal of Death and Dying*, pp. 1-26.

[viii] Ayahuasca and Diabetes

Wang, P. et al., (2015). A high-throughput chemical screen reveals that harmine-mediated inhibition of DYRK1A increases human pancreatic beta cell replication. *Nature Medicine 21*, pp. 383–388.

### ix Entheogens and Cluster Headaches

Schindler, E., et al. (2015) Indoleamine Hallucinogens in Cluster Headache: Results of the Clusterbusters Medication Use Survey, Journal of Psychoactive Drugs, 47:5, 372-381, DOI: 10.1080/02791072.2015.1107664

### x Historical Use of Entheogens

El-Seedi, H., et al. (2005). Prehistoric peyote use: Alkaloid analysis and radiocarbon dating of archaeological specimens of *Lophophora* from Texas. *Journal of Ethnopharmacology 101*(1), pp. 238-242.

Guzmán, G. (2008). Hallucinogenic Mushrooms in Mexico: An Overview. *Economic Botany, 62*(3), pp. 404-412.

Miller, L. et al., (2019). Chemical evidence for the use of multiple psychotropic plants in a 1,000-year-old ritual bundle from South America. *Proceedings of the National Academy of Sciences.* DOI:10.1073/pnas.190217411

Samorini, G. (1992). The Oldest Representations Of Hallucinogenic Mushrooms In The World (Sahara Desert, 9000 – 7000 B.P.). *Integration, Journal of Mind-moving Plants and Culture 2/3.*

### xi Iboga/Ibogaine for Addiction Therapy

Alper, K., et al. (1999). Treatment of acute opioid withdrawal with ibogaine. *American Journal of Addictions, 8*(3), 234–242. doi:10.1080/105504999305848

Brown, T. K. (2013). Ibogaine in the treatment of substance dependence. *Current Drug Abuse Reviews, 6*(1), 3–16. doi:10.2174/15672050113109990001

Brown, T. and Alper, K. (2017): Treatment of opioid use disorder with ibogaine: detoxification and drug use outcomes. *The American Journal of Drug and Alcohol Abuse.* DOI: 10.1080/00952990.2017.1320802

Luciano, D. (1998). Observations on treatment with ibogaine. *American Journal of Addictions, 7*(1), pp. 89–89. doi:10.1111/j.1521-0391.1998.tb00472.x

Mash, D., et al. (2001). Ibogaine in the treatment of heroin withdrawal. In K. Alper, & G. A. Cordell (Eds.), *The alkaloids: Chemistry and biology* (1st ed., Vol. 56, pp. 155–171). London: Academic Press/Elsevier.

Mash, D., et al., (2018) Ibogaine Detoxification Transitions Opioid and Cocaine Abusers Between Dependence and Abstinence: Clinical Observations and Treatment Outcomes. Frontiers in Pharmacology. 9:529. doi: 10.3389/fphar.2018.00529

Sheppard, S. G. (1994). A preliminary investigation of ibogaine: Case reports and recommendations for further study. *Journal of Substance Abuse Treatment, 11*(4), 379–385. doi:10.1016/0740-5472(94)90049-3

### xii Ayahuasca Experience similar to Near-Death Experience

Liester, M. B. (2013). Near-death experiences and ayahuasca-induced experiences – two unique pathways to a phenomenologically similar state of consciousness.

*Journal of Transpersonal Psychology 45*(1), p. 24.

xiii Ayahuasca for Addiction Therapy

Barbosa, P. et al. (2018) Assessment of Alcohol and Tobacco Use Disorders Among
    Religious Users of Ayahuasca. *Frontiers in Psychiatry, 9* (136).
    doi:10.3389/fpsyt.2018.00136
Brierley, D., and Davidson, C. (2012). Developments in harmine pharmacology –
    Implications for ayahuasca use and drug-dependence treatment. *Progress in
    Neuro-psychopharmacology & Biology 39*(2), pp. 263-272.
Liester, M. and Prickett, J. (2012) Hypotheses Regarding the Mechanisms of
    Ayahuasca in the Treatment of Addictions. *Journal of Psychoactive Drugs, 44*
    (3), pp. 200-208. DOI: 10.1080/02791072.2012.704590
Loizaga-Velder, A. and R. Verres (2014). Therapeutic effects of ritual ayahuasca use in
    the treatment of substance dependence--qualitative results. *Journal of
    Psychoactive Drugs 46*(1), pp. 63-72.
Mabit, J., et al. (1996). Takiwasi: The Use of Amazonian Shamanism to Rehabilitate
    Drug Addicts. *Yearbook of Cross-Cultural Medicine and Psychotherapy*. W.
    Andritzky. Berlin, International Institute of Cross-Cultural Therapy Research.
Talina, P., and Sanabriab, E. (2017). Ayahuasca's entwined efficacy: An ethnographic
    study of ritual healing from addiction. *International Journal of Drug Policy 44*, pp.
    23–30.
Thomas, G., et al. (2013). Ayahuasca-assisted therapy for addiction: results from a
    preliminary observational study in Canada. *Current Drug Abuse Review 6*(1), pp.
    30-42.

xiv Ayahuasca and Depression

Anderson, B. (2012). Ayahuasca as Antidepressant? Psychedelics and Styles of
    Reasoning in Psychiatry. *Anthropology of Consciousness, 23* (1), pp. 44–59.
de L. Osório, F., et al. (2015). Antidepressant effects of a single dose of ayahuasca in
    patients with recurrent depression: a preliminary report. *Revista Brasileira de
    Psiquiatria 37(1)*, pp. 13-20.
Palhano-Fontes, F., et al. (2014). The Therapeutic Potentials of Ayahuasca in the
    Treatment of Depression. *The Therapeutic Use of Ayahuasca*. B. C. Labate and
    C. Cavnar, Springer: Berlin, Heidelberg, pp. 23-39.
dos Santos, R., et al. (2016). Anti-depressive, anxiolytic, and anti-addictive effects of
    ayahuasca, psilocybin and lysergic acid diethylamide (LSD): A systematic review
    of clinical trials published in the last 25 years. *Therapeutic Advances in
    Psychopharmacology, 6*(3), pp. 193–213. doi:10.1177/2045125316638008

xv Ayahuasca and PTSD

Nielson, J. and Megler, J. (2014). Ayahuasca as a Candidate Therapy for PTSD. *The
    Therapeutic Use of Ayahuasca*. B. C. Labate and C. Cavnar, Springer: Berlin,

Heidelberg, pp. 41-58.

[xvi] Ayahuasca and Personal Growth

Bouso, J. C., et al. (2012). "Personality, Psychopathology, Life Attitudes and Neuropsychological Performance among Ritual Users of Ayahuasca: A Longitudinal Study. *PLoS ONE 7*(8).
Kuypers, K., et al. (2016). Ayahuasca enhances creative divergent thinking while decreasing conventional convergent thinking. *Psychopharmacology*. DOI 10.1007/s00213-016-4377-8
Soler J., et al. (2018). Four Weekly Ayahuasca Sessions Lead to Increases in "Acceptance" Capacities: A Comparison Study With a Standard 8-Week Mindfulness Training Program. *Frontiers in Pharmacology, 9* (224). doi: 10.3389/fphar.2018.00224

[xvii] Ayahuasca and Spiritual Growth

Harris, R., and Gurel, L. (2012). A Study of Ayahuasca Use in North America. *Journal of Psychoactive Drugs 44*(3): 209-215.
Trichter, S., et al. (2009). Changes in spirituality among ayahuasca ceremony novice participants. *Journal of Psychoactive Drugs 41*(2), pp. 121-134.
Tupper, K. (2010). Entheogenic healing: The spiritual effects and therapeutic potential of ceremonial ayahuasca use. *The healing power of spirituality: How faith helps humans thrive, Volume 3*. J. H. Ellens. Santa Barbara, Praeger: pp. 269-282.
Tupper, K. W. (2002). Entheogens and Existential Intelligence: The Use of Plant Teachers as Cognitive Tools. *Canadian Journal of Education 27*(4), pp. 499-516.

[xviii] Peyote for treatment of alcohol and drug dependence

Winkelman, M. (2014). Psychedelics as Medicines for Substance Abuse Rehabilitation: Evaluating Treatments with LSD, Peyote, Ibogaine and Ayahuasca. *Current Drug Abuse Reviews 7*, pp. 101-116.

[xix] Peyote

Calabrese, J. (2007). The Therapeutic Use of Peyote in the Native American Church Chapter 3 in Vol. 1 of *Psychedelic Medicine: New Evidence for Hallucinogens as Treatments.* Michael J. Winkelman and Thomas B. Roberts (editors). Westport, CT: Praeger/Greenwood.
Feeney, K. (2007). The Legal Basis for Religious Peyote Use. Chapter 13 in Vol 1 of *Psychedelic Medicine: New Evidence for Hallucinogens as Treatments.* Michael J. Winkelman and Thomas B. Roberts (editors). Westport, CT: Praeger/Greenwood.

[xx] Psilocybin for End-of-Life Anxiety

Blinderman, C. (2016). Psycho-existential distress in cancer patients: A return to entheogens. *Journal of Psychopharmacology 30* (12), pp. 1205-1206.

Kelmendi, B., et al. (2016). The role of psychedelics in palliative care reconsidered: A case for psilocybin. *Journal of Psychopharmacology 30*(12), pp. 1212-1214.

Ross, S., et al. (2016). Rapid and sustained symptom reduction following psilocybin treatment for anxiety and depression in patients with life-threatening cancer: a randomized controlled trial. *Journal of Psychopharmacology, 30*(12), pp. 1165-1180.

[xxi] Entheogens and Reduced Recidivism

Hendricks, P., et al. (2014). Hallucinogen use predicts reduced recidivism among substance-involved offenders under community corrections supervision. *Journal of Psychopharmacology 28*(1), pp. 62-66.

Walsh, Z. , et al. (2016). Hallucinogen use and intimate partner violence: Prospective evidence consistent with protective effects among men with histories of problematic substance use. *Journal of Psychopharmacology*, pp. 1-7. DOI:10.1177/0269881116642538.

[xxii] Psilocybin and Treatment-Resistant Depression

Hendricks, P., et al. (2015). Psilocybin, psychological distress, and suicidality. *Journal of Psychopharmacology, 29*(9), pp. 1041–1043.

Lyons, T. and Carhart-Harris, R. (2018). Increased nature relatedness and decreased authoritarian political views after psilocybin for treatment-resistant depression. *Journal of Psychopharmacology, 32*(7), pp. 811–819.

[xxiii] Psilocybin and Cluster Headaches

Schindler, E. et al., (2015) Indoleamine Hallucinogens in Cluster Headache: Results of the Clusterbusters Medication Use Survey, *Journal of Psychoactive Drugs, 47*(5), pp. 372-381. DOI:10.1080/02791072.2015.1107664

Exhibit 3



# SUPERIOR COURT OF CALIFORNIA
## County of Alameda

### SEARCH WARRANT AFFIDAVIT



FILED
ALAMEDA COUNTY

**Report No:**   20-038992

**Affiant's name and agency**
(hereinafter "Affiant"):

**Warrant No:**

JOHN ROMERO (OAKLAND PD)

AUG   7 2020

CLERK OF THE SUPERIOR COURT
By_____
Deputy

**Place(s) to be searched:**

An affidavit by Officer John Romero 8927, which was sworn to and subscribed before me on this date, has established probable cause for the issuance of this search warrant which you are ordered to search the following:

a) Place(s) to be searched:

1.      1216 10th Ave, Oakland, California.

1216 10th Ave, Oakland, is a two-story commercial structure. The structure is a solid beige in color with green trim color around the target locations front door. The front door is located on the ground floor of the west side of the structure. The front door faces west.  A black security gate protects the front door. There are no steps leading to the front door. There is a small 3ft x 3ft sliding window to the right of the security gate, with black iron security bars attached to the exterior. There is an exterior stairway leading to the second story of the structure. The stairway consists of twenty-two steps. The stairway is located the left of the front door.

The premises and all parts therein, including all rooms, attics, crawl spaces, basements, safes, containers and other parts of the above residence(s).  It also includes the surrounding ground(s), garage(s), storage room(s), mailbox (es), container(s), and out building(s) of any kind thereon.

b) Person(s) to be searched:

1.      All persons located inside of the commercial structure located at 1216 10th Ave, Oakland, CA described above.

c) Vehicle(s) to be searched:

1.      Any vehicle(s) within the garage(s), ground(s), or storage area(s) at the above location(s) or any vehicle(s) under the custody or control of the occupant(s) established by admission(s), the possession of ignition keys, door keys, or ownership documents.

**Evidence to be seized:**

Property to be seized:

1.      Cannabis
2.      Manufactured Cannabis material
3.      Firearms.
4.      U.S. currency.
5.      Paraphernalia associated with the use of Cannabis, including but not limited to:  cigarette papers, razor blades, smoking devices.
6.      Paraphernalia associated with the sale of Cannabis, including but not limited to: packaging materials, scales, and other measuring instruments.
7.      Property tending to document the sales of Cannabis, including but not limited to: buyer/seller lists, pay/owe sheets, and price lists, financial documents,
8.      Personal property tending to establish the sales of Cannabis, including but not limited to: scanners and closed circuit video equipment, computers
9.      Personal property tending to show the identity of the persons in control of the residence(s), vehicle (s), storage area(s) and container(s) being searched, including but not limited to: writings, mail, receipts,

Document #:  WAR622122

photographs, videotapes, latent fingerprints, answering machine tapes, inscribed items, keys, clothing, and telephone books.

10.      Phone calls incoming during the service of the warrant.  Thus, the officers serving this warrant are authorized to answer any telephone calls placed to the premises during the service and execution of the warrant and to converse with the caller(s) without revealing the identity of the officer(s).

11.      Advertisement and promotional materials used to recruit new customer and promote existing customer usership. These items include but not limited to posters, flyers, stickers, giveaway items and paraphenailea. Such items having a similar name, logo, or specific markings unique to one or more enitities having an intrest in the illegal Marijuana dispensary activity at 1216 10th Ave, Oakland

**Evidence type:** The described evidence appears to fall within the following classification (Pen. Code § 1524):

☑ Property or things used as a means of committing a felony.

☑ Property or things in the possession of a person with intent to use as a means of committing a crime, or in the possession of another to whom he may have delivered it for the purpose of concealment or preventing discovery.

☑ Property or things that are evidence that tends to show that a felony has been committed, or tends to show that a particular person committed a felony.

**Statement of Probable Cause:**

In May of 2019 the City of Oakland Nuisance Abatement Office received information from an anonymous complainant that the 1216 10th Ave location has been operating as a Cannabis Dispensary. I conducted a search of the address on the open source medial web site www.Weedmaps.com . Weedmaps.com is a social medial wed site specifically designed to advertise Cannabis businesses within a designed geography area that the user specifies. Using "1216 10th Ave Oakland" as search filter I was able to locate this location which was listed as a Commercial Cannabis Dispensary in the City of Oakland.

On 06AUG20 I conducted a Buy/Walk operation targeting Zide Door Church of Entheogenic Plants. During that operation I entered 1216 10th Ave in an undercover capacity posing as a customer. I entered the structure by contacting the armed security guard who was standing behind the front security door. After entering the structure, I showed the receptionist my valid CA identification card. I was required to join the church as a monthly member. After completing the membership process, I was able to purchase 3.5 grams of packaged Cannabis buds material and manufactured Cannabis material for U.S. Currency. After purchasing the Cannabis products, I left the location and documented the incident (OPD Report # 20-038787). The Cannabis products purchased during the incident was turned into evidence pending further investigation.

The 1216 10th Ave location does not have a permit to operate as a commercial Cannabis Dispensary from the City of Oakland. Oakland is the local licensing authority and has not approved a temporary or permanent license for this location or any commercial Cannabis entity related to this location. The State of California's Bureau of Cannabis Control has not issued this location a temporary or permanent state license to operate a commercial Cannabis Dispensary. All commercial cannabis Dispensaries are required to have a license from the local authority and the state to legally engage in the sales of medical or recreational marijuana to the public.

**Special requests:**

**Declaration:** I declare under penalty of perjury that the information contained herein that is based on my personal knowledge is true.  Identity and signature of affiant verified by CRIMS.

| 08/07/2020 18:21:49 | | JOHN ROMERO |
|---|---|---|
| Date | | Affiant |

Document #:  WAR622122

Exhibit 4



# SUPERIOR COURT OF CALIFORNIA
## County of Alameda

<div style="border:1px solid">

## SEARCH WARRANT

</div>



**The People of the State of California**

**To Any peace officer in Alameda county:**

**Affiant's name and agency:**    JOHN ROMERO (OAKLAND PD)

**Warrant No:**

**Report No:** 20-038992

The affidavit filed herewith by Affiant above, sworn to and subscribed before me on this date, has established probable cause for this warrant which you are ordered to execute as follows:

Place(s) to be searched:

An affidavit by Officer John Romero 8927, which was sworn to and subscribed before me on this date, has established probable cause for the issuance of this search warrant which you are ordered to search the following:
a) Place(s) to be searched:

1.      1216 10th Ave, Oakland, California.

1216 10th Ave, Oakland, is a two-story commercial structure. The structure is a solid beige in color with green trim color around the target locations front door. The front door is located on the ground floor of the west side of the structure. The front door faces west.  A black security gate protects the front door. There are no steps leading to the front door. There is a small 3ft x 3ft sliding window to the right of the security gate, with black iron security bars attached to the exterior. There is an exterior stairway leading to the second story of the structure. The stairway consists of twenty-two steps. The stairway is located the left of the front door.

The premises and all parts therein, including all rooms, attics, crawl spaces, basements, safes, containers and other parts of the above residence(s).  It also includes the surrounding ground(s), garage(s), storage room(s), mailbox (es), container(s), and out building(s) of any kind thereon.

b) Person(s) to be searched:

1.      All persons located inside of the commercial structure located at 1216 10th Ave, Oakland, CA described above.

c) Vehicle(s) to be searched:

1.      Any vehicle(s) within the garage(s), ground(s), or storage area(s) at the above location(s) or any vehicle(s) under the custody or control of the occupant(s) established by admission(s), the possession of ignition keys, door keys, or ownership documents.

**Evidence to be seized:**

Property to be seized:

1.      Cannabis
2.      Manufactured Cannabis material
3.      Firearms.
4.      U.S. currency.
5.      Paraphernalia associated with the use of Cannabis, including but not limited to:  cigarette papers, razor blades, smoking devices.
6.      Paraphernalia associated with the sale of Cannabis, including but not limited to: packaging materials, scales, and other measuring instruments.
7.      Property tending to document the sales of Cannabis, including but not limited to: buyer/seller lists, pay/owe

Document #:  WAR622122

sheets, and price lists, financial documents,

8.    Personal property tending to establish the sales of Cannabis, including but not limited to: scanners and closed circuit video equipment, computers

9.    Personal property tending to show the identity of the persons in control of the residence(s), vehicle(s), storage area(s) and container(s) being searched, including but not limited to: writings, mail, receipts, photographs, videotapes, latent fingerprints, answering machine tapes, inscribed items, keys, clothing, and telephone books.

10.    Phone calls incoming during the service of the warrant.  Thus, the officers serving this warrant are authorized to answer any telephone calls placed to the premises during the service and execution of the warrant and to converse with the caller(s) without revealing the identity of the officer(s).

11.    Advertisment and promotional materials used to recruit new customer and promote existing customer usership. These items include but not limited to posters, flyers, stickers, giveaway items and paraphenailea. Such items having a similar name, logo, or specific markings unique to one or more enitities having an intrest in the illegal Marijuana dispensary activity at 1216 10th Ave, Oakland

**Authorization to implement special procedure(s):** The Affidavit filed herewith has demonstrated legal justification for the implementation of the following special procedures which shall be employed by the officers who execute this warrant:

**Disposition of Property:** Pursuant to Penal Code §§ 1528(a), 1536. all property seized pursuant to this search warrant shall be retained in the affiant's custody pending further court order.

| 08/07/2020 18:34:38 | *Judge MJ Gaffey* |
|---|---|
| Date and time warrant issued | Judge of the Superior Court |

Document #:  WAR622122



# SUPERIOR COURT OF CALIFORNIA
## County of Alameda

### SEARCH WARRANT



**The People of the State of California**

**To Any peace officer in Alameda county:**

**Affiant's name and agency:**     JOHN ROMERO (OAKLAND PD)

**Warrant No:**

**Report No:** 20-038992

The affidavit filed herewith by Affiant above, sworn to and subscribed before me on this date, has established probable cause for this warrant which you are ordered to execute as follows:

Place(s) to be searched:

An affidavit by Officer John Romero 8927, which was sworn to and subscribed before me on this date, has established probable cause for the issuance of this search warrant which you are ordered to search the following:
a) Place(s) to be searched:

1.      1216 10th Ave, Oakland, California.

1216 10th Ave, Oakland, is a two-story commercial structure. The structure is a solid beige in color with green trim color around the target locations front door. The front door is located on the ground floor of the west side of the structure. The front door faces west. A black security gate protects the front door. There are no steps leading to the front door. There is a small 3ft x 3ft sliding window to the right of the security gate, with black iron security bars attached to the exterior. There is an exterior stairway leading to the second story of the structure. The stairway consists of twenty-two steps. The stairway is located the left of the front door.

The premises and all parts therein, including all rooms, attics, crawl spaces, basements, safes, containers and other parts of the above residence(s).  It also includes the surrounding ground(s), garage(s), storage room(s), mailbox (es), container(s), and out building(s) of any kind thereon.

b) Person(s) to be searched:

1.      All persons located inside of the commercial structure located at 1216 10th Ave, Oakland, CA described above.

c) Vehicle(s) to be searched:

1.      Any vehicle(s) within the garage(s), ground(s), or storage area(s) at the above location(s) or any vehicle(s) under the custody or control of the occupant(s) established by admission(s), the possession of ignition keys, door keys, or ownership documents.

**Evidence to be seized:**

Property to be seized:

1.      Cannabis
2.      Manufactured Cannabis material
3.      Firearms.
4.      U.S. currency.
5.      Paraphernalia associated with the use of Cannabis, including but not limited to:  cigarette papers, razor blades, smoking devices.
6.      Paraphernalia associated with the sale of Cannabis, including but not limited to: packaging materials, scales, and other measuring instruments.
7.      Property tending to document the sales of Cannabis, including but not limited to: buyer/seller lists, pay/owe

Document #:  WAR622122

Page 1 of 2

photographs, videotapes, latent fingerprints, answering machine tapes, inscribed items, keys, clothing, and telephone books.

10.     Phone calls incoming during the service of the warrant. Thus, the officers serving this warrant are authorized to answer any telephone calls placed to the premises during the service and execution of the warrant and to converse with the caller(s) without revealing the identity of the officer(s).

11.     Advertisement and promotional materials used to recruit new customer and promote existing customer usership. These items include but not limited to posters, flyers, stickers, giveaway items and paraphenailea. Such items having a similar name, logo, or specific markings unique to one or more enitities having an intrest in the illegal Marijuana dispensary activity at 1216 10th Ave, Oakland

**Evidence type:**     The described evidence appears to fall within the following classification (Pen. Code § 1524):

[✓] Property or things used as a means of committing a felony.

[✓] Property or things in the possession of a person with intent to use as a means of committing a crime, or in the possession of another to whom he may have delivered it for the purpose of concealment or preventing discovery.

[✓] Property or things that are evidence that tends to show a felony has been committed, or tends to show that a particular person committed a felony.

**Statement of Probable Cause:**

In May of 2019 the City of Oakland Nuisance Abatement Office received information from an anonymous complainant that the 1216 10th Ave location has been operating as a Cannabis Dispensary. I conducted a search of the address on the open source medial web site www.Weedmaps.com . Weedmaps.com is a social medial wed site specifically designed to advertise Cannabis businesses within a designed geography area that the user specifies. Using "1216 10th Ave Oakland" as search filter I was able to locate this location which was listed as a Commercial Cannabis Dispensary in the City of Oakland.

On 06AUG20 I conducted a Buy/Walk operation targeting Zide Door Church of Entheogenic Plants. During that operation I entered 1216 10th Ave in an undercover capacity posing as a customer. I entered the structure by contacting the armed security guard who was standing behind the front security door. After entering the structure, I showed the receptionist my valid CA identification card. I was required to join the church as a monthly member. After completing the membership process, I was able to purchase 3.5 grams of packaged Cannabis buds material and manufactured Cannabis material for U.S. Currency. After purchasing the Cannabis products, I left the location and documented the incident (OPD Report # 20-038787). The Cannabis products purchased during the incident was turned into evidence pending further investigation.

The 1216 10th Ave location does not have a permit to operate as a commercial Cannabis Dispensary from the City of Oakland. Oakland is the local licensing authority and has not approved a temporary or permanent license for this location or any commercial Cannabis entity related to this location. The State of California's Bureau of Cannabis Control has not issued this location a temporary or permanent state license to operate a commercial Cannabis Dispensary. All commercial cannabis Dispensaries are required to have a license from the local authority and the state to legally engage in the sales of medical or recreational marijuana to the public.

**Special requests:**

**Declaration:** I declare under penalty of perjury that the information contained herein that is based on my personal knowledge is true.  Identity and signature of affiant verified by CRIMS.

| 08/07/2020 18:21:49 | JOHN ROMERO |
|---|---|
| Date | Affiant |

Exhibit 5



Exhibit 6

Exhibit 7

Zide Door, part of the Church of Ambrosia, has four requirements for membership:
1. Personally accept Entheogenic Plants as your religious sacrament.
2. Meet with another Church Member to verify agreement with the Church of Ambrosia Statement of Doctrine, and be in agreement with the Church of Ambrosia Membership Agreement by digitally signing it.
3. Participation in a group worship at the Zide Door Location, unless an exception is approved by the Elders.
4. Agree to follow all the rules of the church.

The Church of Ambrosia Membership Agreement and Rules of Conduct.

As a member of the Church of Ambrosia I agree to follow the foregoing rules and regulations at all times. I acknowledge that my use of the religious event center, and access to church and religious events or religious materials may be revoked at any time if it is found by the church leaders and governing members that I have violated these rules in any way. Should I wish to appeal this decision, or the period of time for which this revokal is valid I can do so by submitting my request for an in person appeal to occur. This request must be done in writing within two days of notification of revocation. Revocation need be done orally, and does not have to be done in writing.
1. I will not remove any religious materials or tools from church without written consent to remove said materials from the church agents and or representatives authorized to do so.
2. I will leave the church cleaner than when I arrived.
3. I will not smoke or use Entheogenic Plants within 50 feet of outside the church.
4. I will be at all times discreet, and respectful of others at the church.
5. I will not use my cell phone at the church
6. I will support the cultural, spiritual and adult use of Entheogenic Plants in Oakland.
7. From time to time, when possible, I will donate my time if requested or needed by the church, for the betterment of Oakland, and the church.
8. I will not talk about the private member activities that occur at the church with non members.
9. I acknowledge the church is not a dispensary.
10. I will not rely on, nor will I be able to purchase sacrament at the church.
11. Any sacrament acquired at the church belongs to the members as a whole, and not to any individual patient or adult use member, and is intended to be consumed on site.
12. Any donations made to church towards time expire when member exits the facility.
13. All donations are exchanged with allocated worship space, and any sacrament used during that time is co-owned by all members but shall be designated in accordance to the church staff specifications and instructions and members must select product from within that allotted time designation.
14. Worship space is limited, members must either purchase more time for themselves or their guests when allotted time has expired or exit church.
15. By using this facility I acknowledge and fully understand that as a participant, I will be engaging in activities that involve risk of serious injury, including permanent disability and death, property loss and severe social and economic losses. These risks include, but are not limited to, those caused by: (a) the actions, inactions, or negligence of the organizers of the church, i.e., Church of Ambrosia and Zide Door and its officers, directors, employees, agents, representatives, volunteers, contractors, and/or affiliates (collectively, "ZIDE") and/or worshipers of the church; (b) conditions of the premises or equipment used; (c) rules and regulations regarding the activities; (d) temperature; (e) smoke including but not limited to: Entheogenic Plants, paper, or tobacco smoke; (f) chemicals including beta-myrcene, which are known to the State of California to cause cancer, and cadmium, which are known to the State of California to cause birth defects or other reproductive harm. For more information go to

www.P65 Warnings.ca.gov; (g) condition of participants; and (h) any other liability resulting from membership or attending the church; I further acknowledge and fully understand that there may also be other risks that are not known or foreseeable at this time.  I KNOWINGLY AND VOLUNTARILY ASSUME ALL RISK OF PROPERTY LOSS, PERSONAL INJURY, SERIOUS INJURY, OR DEATH, WHICH MAY OCCUR BY MATERIALS RECIEVED FROM AND/OR ATTENDING THE CHURCH, AND HEREBY FOREVER RELEASE, DISCHARGE, AND HOLD ZIDE HARMLESS FROM ANY CLAIM ARISING FROM SUCH RISK, EVEN IF ARISING FROM THE NEGLIGENCE OF ZIDE, OR FROM THIRD PARTIES, AND I ASSUME FULL RESPONSIBILITY AND LIABILITY FOR MY PARTICIPATION.

Ownership Acknowledgment & Agreement to a Lien on sacrament

As a member of the Church, I  am fully aware that I am in full ownership of the sacrament I receive and have ownership rights over said sacrament from the moment it is cultivated on behalf of the Church. That when I provide cash proceeds I am merely reimbursing the Church for the time, travel, laboratory testing, maintenance and upkeep of the sacrament provided within. I am by no means "paying for" or "purchasing" my sacrament as I already have ownership over said sacrament.

I acknowledge that Zide Door is providing me with my sacrament which requires regular maintenance and upkeep of which I acknowledge I must reimburse Zide Door at the amount deemed necessary by Zide Door Management Members to cover these overhead costs. I acknowledge that a portion of the reimbursement I provide to Zide Door is also applied towards the sacrament needed for other members of this association that are unable to afford to pay for these overhead costs associated with obtaining their medication. I thus authorize Zide Door to maintain possession of said sacrament until the time I have reimbursed Zide Door for the overhead costs associated with the quantity of sacrament that is reasonably related to my religious needs.

Exhibit 8

7/27/22, 10:46 PM                                        Eric Henry | Zide Door

# Eric Henry
23418

---

**First Name**                          **Last Name**

Eric                                    Henry

**Member Status**

Active

**Membership Type**

Normal ($5 per month)

**STAFF: ID is readable & valid**       **INTAKE STAFF**

Yes                                     jcl

**Membership Expiration Date**          **Registration Date**

September 06, 2020                       Joined August 07, 2020

**Birth Date**

November 23, 1976

**Member Number**

23418

---

**Do you accept Entheogenic Plants (including cannabis and mushrooms) as part of your religion?**

Yes

**Are you under the age of 21?**

No

**Do you work for Law Enforcement or Any Government Agency?**

No

7/27/22, 10:46 PM                                                    Eric Henry | Zide Door

**Do you agree to follow the rules and regulations of the club?**

Yes

**Do you smoke, consume, or use Entheogenic Plants in any way?**

Yes

**Do you think Adults should have a safe place to use and/or acquire Entheogenic Plants?**

Yes

**Do you support the private Adult use of Entheogenic Plants?**

Yes

**Mobile Number**

5106298927

**E-mail Address**

Cellphone510@yahoo.com

**ID / Driver Licence**



**Activity Log**

Member created on 2020-08-06 20:41:34

Edited by: jcl @ 8/6/2020, 1:42:50 PM

**IP Address**

10.4.20.14 | Mozilla/5.0 (Linux; diordnA 5.1.1; KFDOWI Build/LVY48F; wv)
AppleWebKit/537.36 (KHTML, like Gecko) Version/4.0 Chrome/70.0.3538.110
Safari/537.36

Exhibit 9

**SEARCH WARRANT INVENTORY**
**OAKLAND POLICE DEPARTMENT**

| Search Date 13 AUG '20 | Day thurs | Starting Time 1315 hrs | Ending Time 1625 | Page 1 of 2 | RD No. 20-038992 |
|---|---|---|---|---|---|

| Officers/Witnesses Present | Serial No. | Officers/Witnesses Present | Serial No. |
|---|---|---|---|
| 1. J. Romero | 8927 | 5. S. Gonzalez | 9576 |
| 2. E. PELAYO | 9740 | 6. M. Gichki | 9615 |
| 3. M. D'ORSO | 9274 | 7. R. BINDER | 9097 |
| 4. E. Mora | 9297 | 8. A. JIMENEZ | 9536 |

Name of Person Served
Location 1216 10th Ave

Address of Search Location  1216 10th Ave    Street    Apt. #    City ☒ Oakland

Area (s) Searched  Premises

| Evidence No. | Location Found | Description of Item |
|---|---|---|
| 1 | ROOM # 3 | One (1) computer, Laptop, HP, Silver, Model 15-D5NGW w/ charger |
| 2 | Room #5 | SEVEN paper sheets 8'/2X11", INVENTORY Logs Dated 13 AUG 20 |
| 3 | ROOM # 5 | CANNABIS EDIBLES, APPROX. 478 TOTAL. |
| 4 | ROOM # 5 | MUSHROOMS, APPROX. 1,1180 GRAMS 2.2 LBS. |
| 5 | ROOM # 5 | FIFTY TWO (52) INDIVIDUALLY WRAPPED CANNABIS JOINTS |
| 6 | ROOM #5 | TWENTY EIGHT (28) MISC. CONCENTRATED CANNABIS CARTRIDGES |
| 7 | ROOM #5 | SEVENTY FOUR (74) CALI TECPRES E-LIQUIDS. |
| 8 | ROOM #5 | APPROX. 14.8 LBS OF CANNABIS FLOWER |
| 9 | Room #2 | One (1) box of pay/owe sheets contain in 32 Envelopes |
| 10 | Room #3 | US Currency totaling $ 320.00 No coins |
| 11 | Room #5 | US Currency totaling $ 1,234.00 No coins |
| 12 | Room #2 | US Currency totaling $ 3,147.79 |
| 13 | Room #2 | Twenty Four (24.36 lbs) of green leafy substance suspected marijuana |
| 14 | Room #2 | Twenty Two (22) packets THC "Pearl" Mix. |
| 15 | Room #2 | Eight Hundred Fifty Two (852) 2 packs Psybocybin P.Mts |

I, the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all the property taken by me on the warrant.

Officer 's Signature _____    Serial No. 8927

Subscribed and sworn to before me on

13 AUG _____, 20 20